Gerald B. WALDRON, individually and doing business as Consolidated Brokerage, Plaintiff,

v.

BRITISH PETROLEUM CO., Ltd., Cities Service Co., Gulf Oil Corp., Socony Mobil Oil Co., Inc., Standard Oil Co. of California, Standard Oil Co. (New Jersey), The Texas Co., Defendants.

United States District Court
S. D. New York.
March 18, 1957.

* 1948 Revision, 28 U.S.C. § 1928.

Casey, Lane & Mittendorf, New York City, for plaintiff, Samuel M. Lane, Robert P. Beshar, New York City, of counsel.

Dwight, Royall, Harris, Koegel & Caskey, New York City, for defendant Standard Oil Co. of California, appearing specially, John F. Caskey, William W. Owens, John R. McCullough, Herbert C. Earnshaw, New York City, of counsel.

DAWSON, District Judge.

These motions seek (1) an order dismissing this private anti-trust action on the ground of improper venue, and (2) an order vacating the purported service of process.

The issue is primarily whether the defendant, an integrated oil company, which does little, if any, business directly in this District, is subject to jurisdiction in this District in an anti-trust action, under the provisions of § 12 of the Clayton Act, 15 U.S.C.A. § 22, by reason of certain activities in this District of its wholly owned subsidiaries.

The movant, Standard Oil Company of California (hereinafter referred to as "Socal") is one of seven defendant oil companies against whom this treble damage, private anti-trust action has been brought by Gerald B. Waldron, doing business as Consolidated Brokerage. The other defendants are British Petroleum Co., Ltd., Cities Service Co., Gulf Oil Corp., Socony Mobil Oil Co., Inc., Standard Oil Co. (New Jersey), and The Texas Co. The complaint alleges that the defendants' actions in regard to the production and distribution of Middle East oil have violated §§ 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1, 2, as well as § 73 of the Wilson Tariff Act, 15 U.S.C.A. § 8.

The principal issue now before the Court is one of venue. Section 12 of the Clayton Act, reading as follows, states the districts in which an action under the anti-trust laws can be brought against a corporate defendant:

> "Any suit, action, or proceeding under the anti-trust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business * * * ".

In support of its motion, Socal contends that it (1) is not an inhabitant of this District, being incorporated in Delaware, (2) was not and could not be found here, and (3) does not transact business here.

Socal is a large integrated company in the petroleum industry. In certain of the Western States it operates directly, but it is also a holding company, owning numerous subsidiaries which produce and market petroleum products in various areas of this country and in foreign countries. The company, in a map which is included in its 1955 Annual Report, referred to the area which encompasses the Southern District of New York as one of its "principal marketing areas." The Annual Report also points out that during the year 1955 the company and its subsidiaries had engaged in exploratory and drilling activities in thirty-three States and Alaska, in six Canadian provinces and territories, and in fifteen countries of Latin America. In its exploration, drilling and marketing activities the company operated to a substantial extent through wholly owned subsidiaries.

Socal has two wholly owned subsidiaries admittedly doing business in the Southern District of New York. They are the California Commercial Company, Inc. and the California Oil Company.

832

The California Commercial Company, Inc. (hereinafter referred to as "Commercial") is a New York corporation having its principal place of business within the Southern District of New York at 30 Rockefeller Plaza. Commercial is described in the 1955 Annual Report of Socal as a "Service Company" operating principally in New York and Washington, D. C. All of its capital has been provided by Socal which has continuously owned all of its stock. Commercial occupies substantially the same business suite, retains the same telephone number, and uses the same office equipment as that occupied and used by Socal prior to the organization of Commercial in January 1940. However, Commercial maintains its own books of account, has its own employees and its own bank accounts. It attempts to preserve, from a corporate standpoint, an identity of its own separate and apart from the parent company. Nevertheless, its inter-connection with Socal is active insofar as business operations are concerned.

The door at Commercial's main office in New York City currently bears this legend:

California Commercial
Company, Inc.
A Subsidiary of
Standard Oil Company
of California

And on the tenants' directory in the main concourse of the building appears: "Standard Oil Company of California. See California Commercial Company Room 4507". Futhermore, in addition to listings under its own name in the New York City telephone directory, Commercial has also maintained this listing: "Standard Oil Co. of California. Call California Coml. Co. Inc.—CIrcl 6–4043". Socal's President and Chairman of the Board are directors of Commercial.

Although the certificate of incorporation of Commercial includes the power to engage in a wide variety of business activities, including the manufacture, mining, pumping, drilling, refining and distribution of petroleum, Commercial has in fact done none of these. Instead it re-

ceives almost $400,000, its entire revenue exclusive of income from securities, for services rendered to Socal and its subsidiaries. By contract, Commercial is compensated for its facilities and services at the rate of cost plus 25%. In each of the last five years, Socal's payments under this contract have aggregated over 95% of the revenue earned by Commercial. Conversely, over 95% of the time expended by Commercial's officers and employees has been consumed in rendering services on behalf of Socal.

As indicated by the papers, the services rendered by Commercial under the contract with Socal may be described as follows:

1. From time to time Commercial receives inquiries from prospective purchasers looking toward the purchase of Socal petroleum products to be delivered almost entirely outside of the Southern District of New York. These inquiries are forwarded to Socal's principal office located in San Francisco, California.

2. Commercial maintains contact with the executive offices of certain business enterprises to which Socal sells petroleum products for delivery and use outside of the Southern District of New York. Customer good will is cultivated by the President and Secretary-Treasurer of Commercial who call at the New York City offices of these business enterprises. These ambassadors of good will possess severely circumscribed power as neither is authorized to accept any order on behalf of Socal or to commit it in any way whatsoever.

3. Responsibility for the distribution of Socal news releases to the Eastern daily and trade press rests upon Commercial, which also services all inquiries made by the press regarding the operations of Socal and its subsidiaries. Some of these inquiries are transmitted to Socal's public relations department in San Francisco. In addition, for the use of this department, Commercial maintains a clipping service of New York newspapers on items relating to Socal and the oil industry in general.

4. Infrequently, Commercial ascertains and forwards credit information

about a prospective customer. But these inquiries, however, do not relate to purchases ultimately delivered in this district.

5. When Socal's eastern customers erroneously address orders to Commercial, the practice is for Commercial to transmit them to Socal for acceptance or rejection. Occasionally Commercial returns these orders to the customer for proper readdressing. On no occasion, however, would Commercial accept an order.

6. When in New York the employees of Socal and its subsidiaries are assisted by Commercial. It arranges itineraries, purchases transportation and other accommodations, and obtains necessary reservations. In addition, telephone service, office space and secretarial assistance are made available by Commercial.

7. As to four Socal affiliates having offices in New York, Commercial acts as liaison with respect to operational activities in the Middle East. These affiliates are the California Texas Corporation (known as "Caltex"), Bahrein Petroleum Company, Arabian American Oil Company (known as "Aramco"), and Trans-Arabian Pipe Line Co. (known as "Tapline").

While Commercial does not directly engage in petroleum marketing, another wholly owned subsidiary does. *California Oil Company* (hereinafter referred to as "California Oil") is a Delaware corporation all of whose capital stock is owned by Socal. While California Oil maintains an office in this District at 45 Rockefeller Plaza and is qualified to do business in New York State, its principal place of business is in Perth Amboy, New Jersey. Engaged in the business of processing and selling petroleum in the eastern part of the United States, California Oil sells petroleum products to wholesalers in the State of New York.

Often such sales are made in bulk, with the wholesaler receiving authorization to resell the product under the trade-mark "Calso." Consequently Calso trade-marked petroleum products are warehoused by wholesalers in the Southern District of New York, where retail sales are made by filling station operators. In the aggregate the sales volume in this District of Calso petroleum products is substantial. The Calso trademark is registered with the United States Patent Office by Socal, which has authorized California Oil to use the registered trade-mark. With the permission of Socal, California Oil has also registered the trade-mark Calso in accordance with the laws of the State of New York, as well as other States in which it operates. Although owned by Socal, Calso is not the trade-mark used by Socal in the sales of gasoline which it makes directly in the Western States.

To aid sales, California Oil distributes certain advertising materials which are forwarded by the wholesalers to retailers for public display and distribution. This material includes calendars, maps, porcelain signs, cardboard placards, as well as other appropriate items, promoting the sale of Calso gasoline and RPM lubricating oils.

In addition to its subsidiaries, Socal has other contacts with this District. While the headquarters of Socal is in San Francisco, its officers and employees find it necessary frequently to come within this District on business. During 1955 the principal representatives of Socal made eleven trips, during which a total number of thirty-two business days were spent in the Southern District of New York. The term "principal representative" is limited to the Chairman of the Board, President, Directors, Vice-Presidents, Secretary, Treasurer and Controller.

To establish that venue is in this District, plaintiff, by his attorney, also urges that many acts in furtherance of the conspiracy alleged in the complaint were committed in this District.[1]

1. The mere allegation of conspiracy would hardly seem sufficient to establish venue in the absence of some showing that the defendant was found in the District or