149 F.Supp. 830 (1957)
Gerald B. WALDRON, individually and doing business as Consolidated Brokerage, Plaintiff,
v.
BRITISH PETROLEUM CO., Ltd., Cities Service Co., Gulf Oil Corp., Socony Mobil Oil Co., Inc., Standard Oil Co. of California, Standard Oil Co. (New Jersey), The Texas Co., Defendants.
United States District Court S. D. New York.
March 18, 1957.
*831 Casey, Lane & Mittendorf, New York City, for plaintiff, Samuel M. Lane, Robert P. Beshar, New York City, of counsel.
Dwight, Royall, Harris, Koegel & Caskey, New York City, for defendant Standard Oil Co. of California, appearing specially, John F. Caskey, William W. Owens, John R. McCullough, Herbert C. Earnshaw, New York City, of counsel.
DAWSON, District Judge.
These motions seek (1) an order dismissing this private anti-trust action on the ground of improper venue, and (2) an order vacating the purported service of process.
The issue is primarily whether the defendant, an integrated oil company, which does little, if any, business directly in this District, is subject to jurisdiction in this District in an antitrust action, under the provisions of § 12 of the Clayton Act, 15 U.S.C.A. § 22, by reason of certain activities in this District of its wholly owned subsidiaries.
The movant, Standard Oil Company of California (hereinafter referred to as "Socal") is one of seven defendant oil companies against whom this treble damage, private anti-trust action has been brought by Gerald B. Waldron, doing business as Consolidated Brokerage. The other defendants are British Petroleum Co., Ltd., Cities Service Co., Gulf Oil Corp., Socony Mobil Oil Co., Inc., Standard Oil Co. (New Jersey), and The Texas Co. The complaint alleges that the defendants' actions in regard to the production and distribution of Middle East oil have violated §§ 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1, 2, as well as § 73 of the Wilson Tariff Act, 15 U.S.C.A. § 8.
The principal issue now before the Court is one of venue. Section 12 of the Clayton Act, reading as follows, states the districts in which an action under the anti-trust laws can be brought against a corporate defendant:
"Any suit, action, or proceeding under the anti-trust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business * * *".
In support of its motion, Socal contends that it (1) is not an inhabitant of this District, being incorporated in Delaware, (2) was not and could not be found here, and (3) does not transact business here.
Socal is a large integrated company in the petroleum industry. In certain of the Western States it operates directly, but it is also a holding company, owning numerous subsidiaries which produce and market petroleum products in various areas of this country and in foreign countries. The company, in a map which is included in its 1955 Annual Report, referred to the area which encompasses the Southern District of New York as one of its "principal marketing areas." The Annual Report also points out that during the year 1955 the company and its subsidiaries had engaged in exploratory and drilling activities in thirty-three States and Alaska, in six Canadian provinces and territories, and in fifteen countries of Latin America. In its exploration, drilling and marketing activities the company operated to a substantial extent through wholly owned subsidiaries.
Socal has two wholly owned subsidiaries admittedly doing business in the Southern District of New York. They are the California Commercial Company, Inc. and the California Oil Company.
*832 The California Commercial Company, Inc. (hereinafter referred to as "Commercial") is a New York corporation having its principal place of business within the Southern District of New York at 30 Rockefeller Plaza. Commercial is described in the 1955 Annual Report of Socal as a "Service Company" operating principally in New York and Washington, D. C. All of its capital has been provided by Socal which has continuously owned all of its stock. Commercial occupies substantially the same business suite, retains the same telephone number, and uses the same office equipment as that occupied and used by Socal prior to the organization of Commercial in January 1940. However, Commercial maintains its own books of account, has its own employees and its own bank accounts. It attempts to preserve, from a corporate standpoint, an identity of its own separate and apart from the parent company. Nevertheless, its inter-connection with Socal is active insofar as business operations are concerned.
The door at Commercial's main office in New York City currently bears this legend:

California Commercial Company, Inc.

A Subsidiary of Standard Oil Company of California
And on the tenants' directory in the main concourse of the building appears: "Standard Oil Company of California. See California Commercial Company Room 4507". Futhermore, in addition to listings under its own name in the New York City telephone directory, Commercial has also maintained this listing: "Standard Oil Co. of California. Call California Coml. Co. Inc.  CIrcl 6-4043". Socal's President and Chairman of the Board are directors of Commercial.
Although the certificate of incorporation of Commercial includes the power to engage in a wide variety of business activities, including the manufacture, mining, pumping, drilling, refining and distribution of petroleum, Commercial has in fact done none of these. Instead it receives almost $400,000, its entire revenue exclusive of income from securities, for services rendered to Socal and its subsidiaries. By contract, Commercial is compensated for its facilities and services at the rate of cost plus 25%. In each of the last five years, Socal's payments under this contract have aggregated over 95% of the revenue earned by Commercial. Conversely, over 95% of the time expended by Commercial's officers and employees has been consumed in rendering services on behalf of Socal.
As indicated by the papers, the services rendered by Commercial under the contract with Socal may be described as follows:
1. From time to time Commercial receives inquiries from prospective purchasers looking toward the purchase of Socal petroleum products to be delivered almost entirely outside of the Southern District of New York. These inquiries are forwarded to Socal's principal office located in San Francisco, California.
2. Commercial maintains contact with the executive offices of certain business enterprises to which Socal sells petroleum products for delivery and use outside of the Southern District of New York. Customer good will is cultivated by the President and Secretary-Treasurer of Commercial who call at the New York City offices of these business enterprises. These ambassadors of good will possess severely circumscribed power as neither is authorized to accept any order on behalf of Socal or to commit it in any way whatsoever.
3. Responsibility for the distribution of Socal news releases to the Eastern daily and trade press rests upon Commercial, which also services all inquiries made by the press regarding the operations of Socal and its subsidiaries. Some of these inquiries are transmitted to Socal's public relations department in San Francisco. In addition, for the use of this department, Commercial maintains a clipping service of New York newspapers on items relating to Socal and the oil industry in general.
4. Infrequently, Commercial ascertains and forwards credit information *833 about a prospective customer. But these inquiries, however, do not relate to purchases ultimately delivered in this district.
5. When Socal's eastern customers erroneously address orders to Commercial, the practice is for Commercial to transmit them to Socal for acceptance or rejection. Occasionally Commercial returns these orders to the customer for proper readdressing. On no occasion, however, would Commercial accept an order.
6. When in New York the employees of Socal and its subsidiaries are assisted by Commercial. It arranges itineraries, purchases transportation and other accommodations, and obtains necessary reservations. In addition, telephone service, office space and secretarial assistance are made available by Commercial.
7. As to four Socal affiliates having offices in New York, Commercial acts as liaison with respect to operational activities in the Middle East. These affiliates are the California Texas Corporation (known as "Caltex"), Bahrein Petroleum Company, Arabian American Oil Company (known as "Aramco"), and Trans-Arabian Pipe Line Co. (known as "Tapline").
While Commercial does not directly engage in petroleum marketing, another wholly owned subsidiary does. California Oil Company (hereinafter referred to as "California Oil") is a Delaware corporation all of whose capital stock is owned by Socal. While California Oil maintains an office in this District at 45 Rockefeller Plaza and is qualified to do business in New York State, its principal place of business is in Perth Amboy, New Jersey. Engaged in the business of processing and selling petroleum in the eastern part of the United States, California Oil sells petroleum products to wholesalers in the State of New York.
Often such sales are made in bulk, with the wholesaler receiving authorization to resell the product under the trademark "Calso." Consequently Calso trade-marked petroleum products are warehoused by wholesalers in the Southern District of New York, where retail sales are made by filling station operators. In the aggregate the sales volume in this District of Calso petroleum products is substantial. The Calso trademark is registered with the United States Patent Office by Socal, which has authorized California Oil to use the registered trade-mark. With the permission of Socal, California Oil has also registered the trade-mark Calso in accordance with the laws of the State of New York, as well as other States in which it operates. Although owned by Socal, Calso is not the trade-mark used by Socal in the sales of gasoline which it makes directly in the Western States.
To aid sales, California Oil distributes certain advertising materials which are forwarded by the wholesalers to retailers for public display and distribution. This material includes calendars, maps, porcelain signs, cardboard placards, as well as other appropriate items, promoting the sale of Calso gasoline and RPM lubricating oils.
In addition to its subsidiaries, Socal has other contacts with this District. While the headquarters of Socal is in San Francisco, its officers and employees find it necessary frequently to come within this District on business. During 1955 the principal representatives of Socal made eleven trips, during which a total number of thirty-two business days were spent in the Southern District of New York. The term "principal representative" is limited to the Chairman of the Board, President, Directors, Vice-Presidents, Secretary, Treasurer and Controller.
To establish that venue is in this District, plaintiff, by his attorney, also urges that many acts in furtherance of the conspiracy alleged in the complaint were committed in this District.[1]
*834 A person would have to be blind to the economic facts of business life if he did not recognize that the activities of Commercial and California Oil in this District are activities which in another less elaborate corporate set-up would be conducted directly by branch offices or agents within the District. It is Socal, and not the subsidiaries, which is the defendant in the present action. What is Socal? It is a large aggregation of invested capital which transacts its business through officers, agents, employees, and through subsidiaries, which in the drilling, production and marketing of oil operate as agents, employees or branch offices would operate. Does the fact that this large business entity, for tax reasons or otherwise, decides to fragmentize its operations into numerous corporate subsidiaries, make the resulting operations of the subsidiaries any the less a part of transaction of business by Socal?
In the early days of the anti-trust laws it was held that for a corporation to be sued in a district in which it did not reside required that it be present in the district by its officers and agents carrying on the business of the corporation in that district, this being the only way in which it could be said to be "found" within the district; that to make it amenable to service of process in the district, the business must be of such nature and character as to warrant the inference that it had subjected itself to the local jurisdiction, and was present in that district by its duly authorized officers or agents. People's Tobacco Co. v. American Tobacco Co., 1918, 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587.
However, by the Clayton Act, which supplemented the earlier anti-trust laws, the local jurisdiction of the district courts was materially enlarged with reference to suits against corporations. Thus § 12 of the Clayton Act provides that a suit, action or proceeding under the anti-trust laws against a corporation, may be brought not only in the judicial district whereof it was an inhabitant, but also in any district wherein it may be found or transacts business. The United States Supreme Court has pointed out that this amendment broadened the venue provisions for anti-trust actions so that even if the corporation was not present by agents carrying on the business for such parent in the sense that it is "found" therein, it would nevertheless be subject to jurisdiction if in the ordinary and usual sense it "transacts business" therein of any substantial character. Eastman Kodak Co. of New York v. Southern Photo Materials Co., 1927, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684.
This still left open the question as to whether a corporation could be deemed to be transacting business through the instrumentality of a wholly owned subsidiary in the local jurisdiction. In cases outside the area of the anti-trust laws, the rule had long been established that a foreign corporation which had a wholly owned subsidiary in the local forum which engaged in local activities of soliciting, selling and distributing products, was not amenable to suit in the local forum, provided the separate identity of the two corporations was maintained. Cannon Mfg. Co. v. Cudahy Packing Co., 1925, 267 U.S. 333, 45 S.Ct. 250, 69 L. Ed. 634. See Berkman v. Ann Lewis Shops, D.C.S.D.N.Y.1956, 142 F.Supp. 417.
The amendment to the anti-trust laws brought about by the adoption of § 12 of the Clayton Act resulted in a more liberal venue provision in anti-trust actions than in most other types of action, and this liberality was intentionally sought by Congress. See discussion of *835 the Congressional history in United States v. National City Lines, 1948, 334 U.S. 573, at pages 583-588, 68 S.Ct. 1169, at pages 1175-1177, 92 L.Ed. 1584. The Supreme Court gave effect to this liberality of venue by holding that the "transacting business" test was fulfilled if the corporate defendant were engaged "in any substantial business operations" in the local jurisdiction. United States v. Scophony Corp., 1948, 333 U.S. 795, 807, 68 S.Ct. 855, 862, 92 L.Ed. 1091. The Supreme Court indicated that "practical, business conceptions" should be substituted "for the previous hair-splitting legal technicalities encrusted upon the `found'  `present'  `carrying-on-business' sequence." Id. 333 U.S. at page 808, 68 S.Ct. at page 862. See Note, Doing Business as a Test of Venue, 56 Colum.L.Rev. 394, 416 (1956).
A corporation may be a fiction of the law but there is no reason to carry the fiction to the extreme of saying that a corporation which has wholly owned subsidiaries performing services in the local jurisdiction which ordinarily would be performed by service employees, or making sales which ordinarily would be made by a sales department, is in fact not transacting business in that jurisdiction, particularly when the entire corporate set-up of the defendant shows that it is designed to operate to a substantial degree through separate corporate entities responding to the wishes and directions of the parent and providing the revenues sought by the parent. We would be exalting fiction over fact if were were to conclude that under those circumstances the parent company was not in fact transacting business in this District through the instrumentality of its wholly owned subsidiaries.
There have been two occasions in the past where Socal has successfully contested venue in this jurisdiction. Amtorg Trading Corp. v. Standard Oil Company of California, D.C.S.D.N.Y.1942, 47 F.Supp. 466, was an action in admiralty started by a libel by Amtorg Trading Corporation. The court held that doing of business by a foreign corporation through a subsidiary does not constitute doing business within the State, so as to make the foreign corporation amenable to process in this State in such an action.
The other action was one brought under the anti-trust laws. Winkler-Koch Engineering Co. v. Universal Oil Products Co., D.C.S.D.N.Y.1946, 70 F.Supp. 77. In that case it was contended that Socal was transacting business in this District through California Commercial Company, Inc., its subsidiary. The court in that case held that the word "found" is synonymous with "doing business" under § 12 of the Clayton Act, and held that the transaction of business in a district by a subsidiary does not constitute business done by the parent if the subsidiary maintains separate legal entity. Hence it was held that Socal was not subject to jurisdiction in the action.
Subsequent to the decision in that case the United States Supreme Court had occasion to consider the meanings of the words "found" and "transacting business" in § 12 of the Clayton Act. United States v. Scophony Corp., 1948, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091.
The Supreme Court pointed out that § 12 of the Clayton Act is an enlargement of § 7 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 15 note, which had provided for suit in the district in which the defendant "resides or is found." The Court held that the question to be determined was whether the corporation in fact transacted business in the district where venue was sought. It said that this was to be determined by substituting practical business conceptions for the hair-splitting legal technicalities encrusted upon the "`found'  `present'  `carrying-on-business' sequence."[2]
It is doubtful if a court today, guided as it must be by these later opinions of *836 the United States Supreme Court, could reach the same conclusion as Judge Bright did in the Universal Oil Products case.
It is the conclusion of the Court that Socal is transacting business in the Southern District of New York and that therefore the instant action may be brought against it in this District under the provisions of § 12 of the Clayton Act.
Nor can Socal properly contend that it would be a violation of due process to find that it is subject to jurisdiction in this District. Certainly Socal has more than "minimum contact" with this jurisdiction which due process might require as a basis for asserting jurisdiction over it. See International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, at page 316, 66 S.Ct. 154, at page 158, 90 L.Ed. 95; nor should the maintenance of the action here offend traditional notions of fair play and substantial justice. See Milliken v. Meyer, 1940, 311 U.S. 457, at page 463, 61 S.Ct. 339, at page 342, 85 L.Ed. 278.
Currently Socal is a defendant in this court in two pending cases which have some relationship with the subject matter of this action:
(1) United States v. Standard Oil Company of California, Civil Docket No. 78-152;
and
(2) United States v. Standard Oil Company (New Jersey) et al., Civil Docket No. 86-27.
In the first mentioned action, the United States seeks to recover from Socal and others certain overcharges alleged to have been made in connection with the purchase of Middle Eastern oil under the ECA and MSA Economic and Military Aid Programs. Defendant did not contest the jurisdiction or venue of this Court in that case.
In the second case, the Government has charged the Standard Oil Company of California and four other American oil companies with monopoly and conspiracy to restrain trade in oil production, refining, transportation and marketing in foreign areas, the major one of which is the Middle East area. The action was originally filed in the District of Columbia. Socal joined in defendants' motion to transfer that action to this court on the basis of trial convenience. The trial court found that the vast preponderance of the documentary evidence and principal witnesses were located here and hence granted the motion. Defendant's moving papers contained an affidavit by a Socal Vice-President providing a geographic self-portrait:
"In statistical terms, San Francisco is the headquarters for companies in which Socal's interest in net assets represents less than 25 per cent of our overseas investments, and New York, New York, is the United States headquarters for companies in which our interest in net assets represents more than 75 per cent of such overseas investments. In terms of our equity in income rather than net assets, San Francisco is the United States headquarters for companies producing about 10 per cent of such overseas income, and New York, New York, the United States headquarters for companies producing 90 per cent of such income."
The second motion presented is a motion to vacate and set aside the service of process upon Socal resulting from the service of process upon G. M. Foster, an officer of said company, in San Francisco, California. The argument is made that extra-territorial service of process is void unless plaintiff can establish that venue is properly laid in this District. As the Court has held that venue is properly laid in this District this argument falls of its own weight. The motion papers show that process was served upon an officer of Socal in San Francisco, California. The papers also show that Socal is a Delaware corporation whose principal place of business is in the State of California. Section 12 of the Clayton Act, 15 U.S. C.A. § 22, provides that in an action under *837 the anti-trust laws "all process * * * may be served in the district of which it [the defendant] is an inhabitant, or wherever it may be found." The papers show that Socal is found in the district where the service of process was made and under § 12 process can be validly served in a district other than that in which the action is pending. Eastman Kodak Co. of New York v. Southern Photo Materials Co., 1927, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684. Therefore the service of process was properly made.
The motions to dismiss this action on the ground of improper venue and to vacate the purported service of process are denied. So ordered.
NOTES
[1] The mere allegation of conspiracy would hardly seem sufficient to establish venue in the absence of some showing that the defendant was found in the District or was transacting business in the District. "Support for the plaintiff's contention that the allegation of conspiracy is sufficient to bring a coconspirator under this court's aegis cannot be found in the applicable statutes." Knox, J. in Hansen Packing Co. v. Armour & Co., D.C. S.D.N.Y.1936, 16 F.Supp. 784, at page 787. See to the same effect Independent Productions Corporation v. Loew's Incorporated, 148 F.Supp. 460 (S.D.N.Y. McGohey, J., Feb. 5, 1957) but cf. United States v. Watchmakers of Switzerland Information Center, D.C.S.D.N.Y.1955, 134 F.Supp. 710, 712.
[2] "The practical, everyday business or commercial concept of doing or carrying on business `of any substantial character' became the test of venue." 333 U.S. at page 807, 68 S.Ct. at page 862.