**LURIA STEEL & TRADING CORPO-RATION et al., Plaintiffs,**

v.

**OGDEN CORPORATION et al., Defendants.**

**Civ. A. No. 70–729.**

United States District Court,
E. D. Pennsylvania.

June 16, 1971.

H. Robert Halper, David R. Melincoff, Washington, D. C., Herbert G. Keene, Jr., Philadelphia, Pa., for plaintiffs.

Edward W. Mullinix, Harvey Levin, Peter S. Greenberg, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

MASTERSON, District Judge.

This is a treble damage antitrust case brought against six corporate defendants and four individual defendants. Three of the corporate defendants, Ogden Corporation (hereinafter "Ogden") and two of its subsidiaries, Ogden Metals, Inc. (hereinafter "Ogden Metals") and Ogden Management Corporation (hereinafter "Ogden Management"), have moved to dismiss the complaint on the ground that venue is improper as to them, or in the alternative, to quash the return of service. A similar motion has been filed on behalf of two of the four individual defendants. Following discovery, plaintiffs conceded that venue is improper as to Ogden Metals. Accordingly, the motion to dismiss as to Ogden

Metals will be granted. The motions as to the other corporate and individual defendants requires more detailed analysis.

## I. MOTIONS TO DISMISS FOR IMPROPER VENUE.

### A. CORPORATE DEFENDANTS.

Ogden, a Delaware corporation with its principal place of business in New York City, sits on top of a somewhat complex corporate hierarchy. Ogden Management, a wholly owned subsidiary of Ogden, owns the entire stock of defendant Ogden American Corporation, (hereinafter "Ogden American") and ABC Consolidated Corporation (hereinafter "ABC Consolidated"). Neither Ogden nor Ogden Management is an "inhabitant" of or is "found" in the Eastern District of Pennsylvania under Section 12 of the Clayton Act, 15 U.S.C. § 22,[1] which governs venue as to the corporate defendants. The plaintiffs contend, however, that each of the above "transacts business" in the Eastern District of Pennsylvania, either directly or through subsidiary agents, so that the requirements of the venue statute are satisfied. Because we think the "direct contracts" outlined by the plaintiffs are insufficient to show that Ogden and Ogden Management transact business in this District,[2] we must decide whether these companies can be said to transact business through their subsidiaries within the meaning of the statute.

It has become clear that the effect of Section 12 of the Clayton Act, 15 U.S.C. § 22, was to liberalize the venue requirements as to corporate defendants in antitrust cases. Eastman Kodak Co. of New York v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L. Ed. 684 (1927); United States v. Scophony Corporations, 333 U.S. 795, 68 S. Ct. 855, 92 L.Ed. 1091 (1948). In the

---

1. "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found".

2. The direct contacts alleged by plaintiffs are the maintaining of bank accounts in Pennsylvania banks, and the making of goodwill and business trips by Ogden's officers into Pennsylvania.

latter case, the Court declared that in determining whether a corporation in fact transacts business in the district where venue is sought, "the practical and broader business conception of engaging in any substantial business operations" was to be substituted for "the highly technical distinction theretofore glossed upon 'found' for filling that term with particularized meaning, or emptying it, under the translation of 'carrying on business'" 335 U.S. at page 807, 68 S.Ct. at page 861.

In this spirit, a growing number of district courts have recognized that where a parent company has sufficient control over a subsidiary, the parent company is held to be transacting business in the district by reason of the activities of the subsidiary. In Waldron v. British Petroleum Co., Ltd., 149 F. Supp. 830 (S.D.N.Y.1957), a California petroleum company was held to be transacting business in the Southern District of New York. Certain language in that case appears particularly apropos here and we quote it at length:

"A person would have to be blind to the economic facts of business life if he did not recognize that the activities of [the subsidiaries] in this District are activities which in another less elaborate corporate set-up would be conducted directly by branch offices or agents within the District. It is Socal, and not the subsidiaries, which is the defendant in the present action. What is Socal? It is a large aggregation of invested capital which transacts its business through officers, agents, employees, and through subsidiaries, which in the drilling, production and marketing of oil operate as agents, employees or branch offices would operate. Does the fact that this large business entity, for tax reasons or otherwise, decides to fragmentize its operations into numerous corporate subsidiaries, make the resulting operations of the subsidiaries any the less a part of transaction of business by Socal?" 149 F.Supp. at page 834.

"A corporation may be a fiction of the law but there is no reason to carry the fiction to the extreme of saying that a corporation which has wholly owned subsidiaries performing services in the local jurisdiction which ordinarily would be performed by service employees, or making sales which ordinarily would be made by a sales department, is in fact not transacting business in that jurisdiction, particularly when the entire corporate set-up of the defendant shows that it is designed to operate to a substantial degree through separate corporate entities responding to the wishes and directions of the parent and providing the revenues sought by the parent. We would be exalting fiction over fact if we were to conclude that under those circumstances the parent company was not in fact transacting business in this District through the instrumentality of its wholly owned subsidiaries." 149 F.Supp. at page 835.

Relying on this language, it was held in Goldlawr, Inc. v. Shubert, 169 F.Supp. 677 (E.D.Pa.1958), that Select Theatres Corporation was transacting business in our district through the activities of two wholly owned local subsidiaries. See also Country Maid, Inc. v. Haseotes, 299 F.Supp. 633 (E.D.Pa.1969); City of Philadelphia v. Morton Salt Co., 289 F. Supp. 723 (E.D.Pa.1968); Flank Oil Co. v. Continental Oil Co., 277 F.Supp. 357 (D.Colo.1967); Schwartzbaum, Inc. v. Evans, Inc., 1968 CCH Trade Cas., Paragraph 72,439 (S.D.N.Y.); Gallen v. Howard D. Johnson Co., Inc., 1967 CCH Trade Cas., Paragraph 72,149 (S.D.N.Y.); Intermountain Ford Tractor Sales Co. v. Massey-Ferguson, Ltd., 210 F. Supp. 930 (D.Utah 1962), aff'd, 325 F. 2d 713 (10th Cir. 1963), cert. den., 377 U.S. 931, 84 S.Ct. 1334, 12 L.Ed.2d 296 (1964).

■ In the factual situation presented to us, it is clear that Ogden and Ogden Management exert sufficient control over the subsidiaries transacting busi-

ness in this district[3] for us to hold that these are both proper corporate defendants for venue purposes. The relationship between Ogden and its subsidiaries involves more than the usual corporation-stockholder relationship since Ogden's authority over these subsidiary companies exceeds the mere election of directors to determine and effectuate policies. Under policies currently in effect, various types of actions must be reported to Ogden by a subsidiary prior to the taking or approving of such action.[4] Furthermore, ten of the twenty-eight individuals who serve as officers or directors of Ogden also serve as officers or directors of one or more of the Ogden subsidiaries which operate in Pennsylvania. The directors of defendant Luria Brothers & Company, Inc. do not even meet, and decisions which would normally be made by the Luria Board are made either by the Ogden Board or the Executive Committee of Ogden. We conclude that it is impossible in these circumstances to hold that Ogden and Ogden Management can by legal structure insulate itself from suit in the Eastern District of Pennsylvania. We conclude that both are "transacting business" within this district.

## B. INDIVIDUAL DEFENDANTS

■ The individual defendants moving to dismiss for lack of venue are Carl Ablon, President of Luria Brothers, and Ralph Ablon, Chairman and Chief Executive of Ogden. Neither "resides or is found" in the Eastern District of Pennsylvania.[5] Plaintiffs contend, however, that William J. Luria and the Phil-

adelphia branch of Luria itself are the "agents" of Carl Ablon and Ralph Ablon in this district.

We find no factual or authoritative support for the plaintiffs' contention. As to Carl Ablon, all that plaintiffs assert is that he is President of Luria Brothers which does business in this district, that as President he is ultimately responsible for the decisions made in the company and that major matters in the operation of the company come to his attention or require his approval. This in no way makes any employee or officer of Luria Brothers the "agent" of Carl Ablon. The same must be true of the general overseeing powers of Ralph Ablon. In effect, we are asked to adopt the proposition that the mere existence of any corporate authority of a general supervisory nature is sufficient to constitute all subordinate officers and employees as agents of the person holding that authority. We refuse to take this extreme position, and the motions to dismiss as to Carl Ablon and Ralph Ablon will be granted.

## II. SERVICE OF PROCESS AS TO THE CORPORATE DEFENDANTS.

■ We next consider the motions of Ogden and Ogden Management to quash service and dismiss the action for lack of jurisdiction.

15 U.S.C. § 22, after laying the venue against corporations in antitrust actions provides that " * * * all process in such cases may be served in the district of which it [the corporation] is an inhabitant, or wherever it may be found." Since we have already determined that

---

3. Twelve wholly owned Ogden subsidiaries transact business in Pennsylvania. Their estimated Pennsylvania sales for 1969 totaled over $65,000,000.

4. For example, prior approval is necessary before a subsidiary may adopt or amend any bonus, stock option, profit sharing or pension plan. Certain other decisions involving professional fees, indebtedness, capital asset purchases and sales, and other contracts must be approved if not in the ordinary course of

business or if in excess of a certain dollar amount.

5. The applicable venue statute, 15 U.S.C. § 15, provides, in relevant part:
"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent. * * *"

venue is proper as to these defendants, it is clear that they may be served at either place designated by the statute, even though those places are outside the district in which suit has been brought. Eastman Kodak Co. of New York v. Southern Photo Materials Co., *supra;* Goldlawr, Inc. v. Shubert, *supra.*

Both Ogden and Ogden Management were served a copy of the summons and complaint at their offices in New York City. Such service was proper.

For the reasons outlined above, the motions to dismiss as to Carl Ablon, Ralph Ablon and Ogden Metals will be granted. The motions as to Ogden and Ogden Management will be denied.