John M. KING and Colorado Corporation, a corporation, Plaintiffs,

v.

Robert L. VESCO et al., Defendants.

No. C-71-1038.

United States District Court, N. D. California.

April 18, 1972.

Belli, Ashe, Ellison, Choulos & Lieff, San Francisco, Cal., for plaintiffs.

Brobeck, Phleger & Harrison, San Francisco, Cal., for defendants International Controls Corp. and Robert L. Vesco, Morrison, Foerster, Holloway, Clinton & Clark, San Francisco, Cal., for defendant Hale Bros. Associates, Inc.

## MEMORANDUM OF DECISION

RENFREW, District Judge.

This is a private treble damage action brought under the Organized Crime Control Act of 1970, 18 U.S.C. § 1961 et seq. (Supp.1972). Such actions are designed to supplement prosecutions by the Department of Justice to combat attempts by organized crime to take over legitimate businesses. That private treble damage actions can materially assist in law enforcement has already been amply demonstrated in the antitrust field. As Mr. Justice Black said in Perma Life Mufflers v. Int'l Parts Corp., 392 U.S. 134, 139, 88 S.Ct. 1981, 1984, 20 L.Ed.2d 982 (1968):

> " * * * the purposes of the antitrust laws are best served by insuring that the private action will be an ever-present threat to deter anyone contemplating business behavior in violation of the antitrust laws."

Although the first amended complaint is hardly a model of the simple, concise and direct pleading contemplated by Rule 8(e) (1) of the Federal Rules of Civil Procedure, its main thrust appears to be that defendants conspired to utilize income derived from "a pattern of racketeering activities" in order to invest in and to assert control over plaintiffs' enterprises in violation of 18 U.S.C. § 1962 (Supp.1972). As a result, plaintiffs claim to have been forced to sell certain assets for less than fair market value and seek, after trebling, an amount in excess of a billion dollars, a return to plaintiffs of certain "control debts or securities," and reasonable attorneys fees.

Defendants Robert L. Vesco and International Controls Corp. ("ICC"), erroneously sued as International Controls Corporation, have moved to dismiss the first amended complaint for improper venue. This Court in a memorandum of decision by Judge William T. Sweigert dated October 1, 1971, previously held the service of process on movants to be ineffective.[1] Plaintiffs have completed their discovery relating to the question of venue and this matter is now before the Court. Plaintiffs have not petitioned this Court for such an order nor have they made any showing that the ends of justice required service upon defendant Vesco or ICC.

The validity of subsequent service upon defendant Vesco was stipulated to depend upon this Court's ruling as to whether it has venue and jurisdiction over him.

---

1. In his thoughtful opinion, Judge Sweigert noted:

> "A careful reading of the statute indicates that 18 U.S.C. section 1965(b) merely empowers the court to summon before it and to cause process to be served upon such 'other parties' when *in its discretion*, the 'ends of justice' so require" (Opinion, p. 4).

■ The Organized Crime Control Act of 1970 provides that venue is proper in the district where the defendant "resides, is found, has an agent, or transacts his affairs" (18 U.S.C. 1965(a) (Supp.1972)). The question of the scope of this provision appears to be one of first impression. The legislative history of 18 U.S.C. § 1965(a) reveals that this section was patterned after the venue provisions of the antitrust laws.[2] Thus, in order to properly construe the venue provision at issue in the instant case, it is necessary to turn to the antitrust provisions and the cases construing them.

Section 4 of the Clayton Act (15 U.S. C. § 15) provides that a private treble damage antitrust action may be brought against an individual defendant "in the district in which the defendant resides or is found or has an agent * * *." As to a corporate defendant such an action " * * * may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business" (section 12 of the Clayton Act (15 U.S.C. § 22)).

Neither Vesco nor ICC resides in this district. Vesco is a resident of New Jersey with other residences located outside of the United States. ICC is a Florida corporation with its principal place of business in New Jersey. It is a resident of Florida, the state in which it is incorporated. Aro Manufacturing Co. v. Automobile Body Research Corp., 352 F.2d 400, 404 (1 Cir. 1965), cert. denied, 383 U.S. 947, 86 S.Ct. 1199, 16 L.Ed.2d 210 (1966).

■ Plaintiff has not established that Vesco was "found" in this district. Furthermore, in order for ICC to be "found" within this district, " * * * it must be present there by its officers and agents carrying on the business of the corporation" (Aro Manufacturing Co. v. Automobile Body Research Corp.,

352 F.2d 400, 404 (1 Cir. 1965). ICC maintains no offices in the Northern District of California, it has no officers or employees carrying on its business here, nor does it perform any services or sell any services or products within this district. Moreover, ICC does not pay any corporate or franchise taxes in this district. Thus given all of the evidence before the Court, ICC cannot be said to be found within this district.

The term "has an agent" was added to the venue provision of the antitrust laws dealing with individuals by the Clayton Act in 1914. The Clayton Act also had enlarged prior venue provisions as to corporations by adding a provision that venue was proper in the district in which a corporation "transacts business." The Supreme Court construed the latter addition as one intended to broaden the concept of "found" in the earlier venue provision. As a result a corporation could be found to be transacting business, and venue established, " * * * although not present by agents carrying on business of such character and in such manner that it is 'found' therein and is amenable to local process,—if in fact, in the ordinary and usual sense, it 'transacts business' therein of any substantial character" (Eastman Kodak Co. of New York v. Southern Photo Materials Co., 273 U.S. 359, 373, 47 S.Ct. 400, 403, 71 L.Ed. 684 (1927)).

Similarly, the addition of the term "has an agent" has been held to have broadened the concept of "found" in the case of an individual, just as the term "transacts business" broadened the concept of "found" in the case of corporate defendants. Judge Kraft in Goldlawr, Incorporated v. Shubert, 169 F.Supp. 677, 681 (E.D.Pa.1958), explained the legislative changes made by the Clayton Act thusly:

"We believe 'or has an agent' broadened the concept of 'found' in the case

---

**2.** "Section 1965 contains broad provisions regarding venue and process, which are modeled on present antitrust legislation"

(2 U.S.Code Cong. & Ad.News, p. 4034 (1970)).

of individual defendants, just as 'transacts business' broadened the concept of 'found' in the case of corporate defendants, although Eastman [Eastman Kodak Co. of New York v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927)] did not decide this question. The purpose of these two changes was to ' \* \* \* give the plaintiff the right to bring suit and have it tried in the district where the defendant had committed violations of .the Act and inflicted the forbidden injuries.' The difference in the choice of words applicable to individual and corporate defendants was intended to avoid too broad a change which might have jeopardized passage of the entire bill."

▮ Since the venue provisions in the Organized Crime Control Act of 1970 are patterned after the comparable provisions of the antitrust laws, the term "has an agent" would appear to be restricted to the individual defendant Vesco, and has no application as against the corporate defendant ICC, since the broader antitrust venue provision relating to corporations would appear to be based upon the parallel term "transacts his affairs" included in 18 U.S.C. § 1965(a) (Supp.1972). In any event, plaintiffs can find no support from the term "has an agent" since neither Vesco nor ICC in fact had an agent in this district upon whom service of the instant suit would render venue proper in this district.

▮ Plaintiffs do not claim that Vesco had an agent in this judicial district; however, they do assert that ICC has expressly appointed an agent in California and thus venue is proper in this district. In support of this contention plaintiffs rely upon ICC's execution of a Uniform Consent to Service of Process Form authorizing service of process on the California Corporations Commission-

er in an action or proceeding "arising out of or in connection with the sale of any security of [ICC's] own issue \* \* \* " (Cal.Corp.Code section 25505(b) (West 1955). The instant suit does not arise out of or in connection with any security issue of ICC. In fact, the only evidence before the Court indicates that none of the contemplated securities was ever issued. Thus the expressly restricted appointment of the California Corporations Commissioner as a limited agent does not support plaintiff's contention.[3]

Therefore, with neither Vesco nor ICC "resid[ing]," "[being] found," or "having] an agent" in this district, the only remaining basis for venue is if Vesco or ICC "transact [their] affairs" within this district.

Turning first to defendant Vesco, the facts bearing on the issue whether he transacts his affairs within this judicial district appear to be as follows. Mr. Vesco, a New Jersey resident, has never resided in California. He owns no property, real or personal, in California, except that he and his wife have had a joint account in a Bank of America branch in Panorama City outside of Los Angeles. Mr. Vesco does not own or operate or transact any personal business in California. He pays no taxes in California. He does not have an office here and he is not employed here. Mr. Vesco does not have an agent or representative in California. In 1968 and 1969 he was President of Electronic Specialty ("E-S"), a subsidiary of ICC, with offices located in Pasadena, California. Mr. Vesco came to Pasadena from time to time in carrying out his duties as a corporate officer. While outside of the State of California, Mr. Vesco talked with an officer of the Bank of America whose office *may have been* located in San Francisco about a possible loan to companies in which Mr. Vesco was interested. Moreover, there is no indication

3. Plaintiffs had also asserted that ICC had appointed one Richard B. Pershing as an agent for service of process in this judicial district, but they have failed to supply any factual basis for this statement. Consequently this unsupported allegation must be disregarded.

in the record as to when Mr. Vesco was last in this district. Considered in their entirety, these few and infrequent contacts of Mr. Vesco in California, none of which were established to have occurred within this district, are insufficient to support venue pursuant to 18 U.S.C. § 1965(a) (Supp.1972).

ICC is a Florida corporation with its principal place of business in New Jersey. Its assets consist primarily of corporate stock and other securities. It does not engage in any manufacturing activity. While several subsidiaries of ICC engage in manufacturing activities within the State of California, they are all outside this district with the exception of the Bergman Division of All American Industries ("AAI") which is located in San Rafael. It is well established by cases construing the venue provisions of the Clayton Act that the mere fact a subsidiary transacts business within a given judicial district does not in and of itself constitute the parent's transacting business within that district. K. J. Schwartzbaum, Inc. v. Evans, Inc., 44 F.R.D. 589 (S.D.N.Y.1968); Zwingle v. Tyson's Food, Inc., 241 F.Supp. 940 (W.D.Okl.1965).

Plaintiffs have made no showing of the degree of control and management exercised by ICC over any of its subsidiaries and particularly AAI. In the absence of such a showing, plaintiffs' reliance on Waldron v. British Petroleum Co., 149 F.Supp. 830 (S.D.N.Y.1957) is misplaced. In *Waldron* the court held that there was venue over the Standard Oil Company of California in New York because it transacted affairs there by the active role it played in managing its subsidiary located in that district. Judge Dawson pointed out that the subsidiary merely took over activities previously performed by the parent prior to its organization of the subsidiary; that the subsidiary was closely identified with the parent in the tenants' directory, the telephone directory, and on the legends on the doors of its offices; that all of its income, exclusive of its income from securities, came from services rendered to the parent and other of its subsidiaries. Unlike the instant case, the subsidiary in *Waldron* engaged in no independent manufacturing activities. Moreover, almost all of the time expended by the subsidiaries' officers and employees was consumed in rendering services on behalf of the parent. There was also evidence of frequent contacts by principal executives of the parent coming to the offices of the subsidiary. It was under these circumstances that the Court found that the parent was transacting business in the Southern District of New York. Plaintiffs have made no such showing in this case.

As was pointed out above, the term "transacts his affairs" in 18 U.S.C. § 1965(a) (Supp.1972) was intended to be synonymous with the term "transacts business" in section 12 of the Clayton Act (15 U.S.C. § 22). A corporation transacts business in a given judicial district within the meaning of the Clayton Act only when it regularly carries on business of a substantial and continuous character within that district. Bruner v. Republic Acceptance Corporation, 191 F.Supp. 200, 203 (E.D.Ark.1961). Based upon the results of discovery, plaintiffs claim that the following contacts establish that ICC did transact business within this district. The first incident concerned a loan made by defendant Hale Brothers Associates to a Bahamian subsidiary of ICC. While the transaction was not simple, the absence of any relationship to this district is clear. Defendant ICC was not in any way involved in the negotiations or in the final transaction. All conversations regarding the loan were held outside of this district. The funds were advanced and repaid outside of this district.

The next transaction upon which plaintiffs rely is the Bank of America's loan to ICC to assist it in the acquisition of the majority of the stock of E–S. However, E–S had its main operations in Portland and has no plants or offices in this district. There is no evidence of record as to where the conversations leading up to the loan from the Bank of America occurred or from which office of the Bank the funds were obtained. It

was a short-term loan which was subsequently refinanced and again refinanced with a different lender.

The third and remaining contact with this district upon which plaintiffs rely consists of certain conversations which defendant Vesco had in his capacity as president of a subsidiary of ICC with a Mr. Al Rice, an officer of the Bank of America. The ICC subsidiary was a Bahamian corporation with its principal place of business in the Bahamas. The only evidence before the Court indicates that Mr. Vesco assumed that Mr. Rice was acting on behalf of a non-domestic banking subsidiary of the Bank of America. There is no evidence that any of the conversations concerning the loan occurred within this district. The transaction contemplated related to a Bahamian subsidiary of ICC and in fact the loan was never made.

Plaintiffs have placed primary reliance on the standards set forth by the Supreme Court in United States v. Scophony Corp., 333 U.S. 795, 819, 68 S.Ct. 855, 867, 92 L.Ed. 1091 (1948) in which Mr. Justice Frankfurter stated in his concurring opinion:

> " * * * a corporation can be 'found' anywhere, whenever the needs of law make it appropriate to attribute location to a corporation, only if activities on its behalf that are more than episodic are carried on by its agents in a particular place."

It is impossible to view these few incidents as establishing the sufficient contact with this district to support a finding that either Vesco or ICC was "found" or "transacts [their] affairs" within this district. Neither individually nor collectively do they have the requisite continuity, substantiality or non-episodic character to support venue within this district.

■ Moreover, this is not a case where a parent corporation committed or caused to be committed an unlawful act within this district and then sought to immunize itself from prosecution within this district on the ground that it did not transact its business here. None of the acts complained of are alleged to have occurred in this district. Under these circumstances, where the contacts with the district are not related to the cause of action asserted, they must be substantial before they can support venue. L. D. Reeder Contractors of Ariz. v. Higgins Industries, 265 F.2d 768, 773 (9 Cir. 1959); United States v. Scophony Corp., 333 U.S. 795, 808, 68 S.Ct. 855, 92 L.Ed. 1091 (1948).

■ It has long been the rule in this district that the burden is on the plaintiff to support both jurisdiction and venue. Austad v. United States Steel Corp., 141 F.Supp. 437, 443 (N.D.Cal. 1956). Plaintiffs have failed to sustain this burden and thus defendants ICC and Vesco's motions to dismiss the complaint for improper venue must be granted.