Bernard S. Meyer, J.
This motion to dismiss for lack of jurisdiction over the person of defendants Aston Martin Lagonda, Limited and Aston Martin Lagonda, Incorporated, raises issues concerning the constitutionality, retroactivity and interpretation of GPLR 302 (subd. [a], par. 3), as amended by chapter 590 of the Laws of 1966, effective September 1, 1966. The motion is denied without prejudice to assertion of the same defense in defendants’ answer or answers.
Limited is a corporation, organized under the laws of Great Britain, which manufactures Aston Martin automobiles. Corporation is a corporation, organized under the laws of the State of Pennsylvania, which imports into and services in Pennsylvania Aston Martin automobiles purchased from Limited and delivers the automobiles in Pennsylvania to dealers *220 who have placed orders for them. J. S. Inskip, Inc. is the distributor for New York and other parts of the Eastern seaboard. Plaintiff Gillmore, about April 29, 1966, purchased an Aston Martin car from Inskip. The car delivered to him by Inskip was manufactured by Limited, imported and serviced by Corporation, and by Corporation delivered to Inskip in Pennsylvania. On May 20, 1966, after delivery of the car to plaintiff in New York, it caught fire and was destroyed, allegedly as a result of defective manufacture and service. In January, 1967 plaintiff commenced this action, which sets forth causes of action for both negligence and breach of warranty, against Limited, Corporation, and Inskip. Inskip has cross-claimed against Limited and Corporation. Plaintiff and Inskip both oppose the motion, but the affidavit submitted on behalf of Inskip is by its attorney and not shown to be based on personal knowledge, and, therefore, is not considered, and the affidavit submitted on behalf of plaintiff adds to the above stated facts only a newspaper clipping stating that in March, 1967 Limited’s deputy managing director announced in New York a price reduction of Aston Martin cars.
On the foregoing facts, jurisdiction, if it exists at all, must be founded on CPLR 302 (subd. [a], par. 3). The complaint alleges a tortious act committed without the State causing injury to property within the State, hut, in addition to that, CPLR 302 (subd. [a], par. 3) requires a showing that defendants (1) regularly do or solicit business in New York, or (2) engage in a persistent course of conduct in New York, (3) or derive substantial revenue from goods used or consumed or services rendered in New York, or (4) expect or reasonably should expect the act to have consequences in New York and derive substantial revenue from interstate or international commerce. The moving papers sufficiently establish that neither moving defendant regularly does or solicits business in New York or engages in any other persistent course of conduct in New York. Even if the Inskip affidavit be considered, it establishes no more than that Inskip has been appointed distributor for New York and that defendants exhibited Aston Martin automobiles at the 1967 Automobile Show. A distributor is not as a matter of law an agent (but cf. Lewin v. Bock Laundry Mach. Co., 16 N Y 2d 1070), and nothing in the papers before the court establishes that Inskip was anything other than an independent contractor to whom an automobile distributorship had been granted. Exhibition at one auto show is not regular business or solicitation nor a persistent course of conduct.
*221 The “ substantial revenue ” provisions of CPLR 302 (subd. [a], par. 3) do not require any connection between the tortious act committed outside the State and the deriving of revenue from goods used in New York or from interstate or international commerce (Judicial Conference Report proposing the bill that became chapter 590, 1966 McKinney’s Sess. Laws, p. 2790), and, under clause (ii) of that section the “ requirement of foreseeability relates to forum consequences generally and not to the specific event which produced injury within the state ” (ibid.). In light of Inskip’s appointment as distributor for the area including New York, defendants “ should reasonably expect ” improper manufacture or servicing “ to have consequences in the state ”. If, therefore, either defendant received “ substantial revenue ” from goods used in New York or from interstate or international commerce, the statute subjects it to personal jurisdiction.
What constitutes ‘1 substantial revenue ’ ’ under CPLR 302 (subd. [a], par. 3, els. [i] and [ii] is not defined in the statute or in the Judicial Conference Report (supra) (1966 McKinney’s Sess. Laws, pp. 2780, 2786-2790) or in the annotations to section 1.03 of the Uniform Interstate and International Procedure Act (9 B Uniform Laws Ann., p. 312) on which chapter 590 was based in part. Viewed in the context of the constitutional limitations discussed below, which required “ minimal contact ” with the forum and proscribe the exercise of jurisdiction when it would be unfair to require a foreign defendant to come into the forum to defend, the phrase should, logically, be construed to require comparison of New York (or interstate or international) gross sales revenue with a defendant’s total gross sales revenue (cf. Kramer v. Vogl, 17 N Y 2d 27, 32) or New York, interstate or international net profits with a defendant’s total net profit, but there are cases which deal with the question of substantiality in terms of dollar volume of sales or profit in the abstract (see Singer v. Walker, 15 N Y 2d 443, 466; Johnson v. Equitable Life Assur. Soc., 22 A D 2d 138, 140, affd. on stipulation for jurisdiction 18 N Y 2d 933; Newman v. Charles S. Nathan, Inc., 46 Misc 2d 407, revd. on other grounds 24 A D 2d 867; Rietsch v. Societe Anonyme Des Automobiles Peugeot, 45 Misc 2d 274). It is not necessary to decide exactly what “ substantial revenue” means for the purpose of CPLR 302 (subd. [a], par. 3), for though the moving affidavits contain conclusory allegations framed in the language of the statute, they set forth neither gross sales nor net profits from New York, or from interstate or foreign commerce, nor *222 comparative total sales or net profit figures. All that the moving papers establish is that one automobile, for which Inskip paid in excess of $12,000 came in to New York and six automobiles valued for customs purposes at $55,586 moved in international commerce from Limited to Corporation. The latter fact, together with the statement in Corporation’s affidavit that its operation consists of importing Aston Martin cars and “ reselling them to distributors and dealers in the Eastern Seaboard aaid Mid-West areas of the United States ”, raises the inference that Corporation derives all of its revenue from interstate or international commerce. On this motion it is up to defendants to show the absence of substantial revenue (cf. Johnson v. Equitable Life Assur. Soc., 16 N Y 2d 1067). Since neither has done so, the motion must, unless the statute is not retroactive or is unconstitutional, be denied. It may, however, be possible for either or both defendants to prove that they do not derive substantial revenue within the meaning of the section; they are, therefore, granted leave to raise the jurisdictional issue in the answer or answers they file.
The retroactivity point can be disposed' of quickly. Longines-Wittnauer v. Barnes & Reinecke (15 N Y 2d 443, 454), establishes that there is no constitutional objection to applying CPLR 302 to a suit instituted after its effective date based on events occurring before its effective date, and the same rule, of course, applies to the 1966 amendment. While both the Longines case and Simonson v. International Bank (14 N Y 2d 281), recognize a possible exception where “ the acts serving as the predicate for jurisdiction under the new section are shown to have been carried out in justifiable reliance on the prior law ” (p. 290), the moving papers make no such showing except as •an inference may arise from the system established by defendants for doing business. The papers do not indicate when the system was established, and in view of the facts that (1) the bill which became the CPLR was signed by the Governor on April 4, 1962, (2) Feathers v. McLucas (15 N Y 2d 443) which adopted a restrictive interpretation of CPLR 302 “ was contrary to legislative intent in enacting the section” (Memorandum of the Judicial Conference, 1966 McKinney’s Sess. Laws, p. 2911) and (3) chapter 590 of the Laws of 1966 was the subject of a Judicial Conference Report to the Legislature dated February 1, 1966, the court cannot find that defendants necessarily fall within the exception (see 1 Weinstein-KornMiller, N. Y. Civ. Prac., par. 302.04). If defendants be so advised, however, they may in pleading the jurisdictional issue in their answer or answers raise the retroactivity question by *223 setting forth the facts which they contend establish their justifiable reliance.
Constitutionality of the provisions under discussion is less easy of solution. The point is touched upon but not decided in the Longines case (15 N Y 2d 443, 464), in Kramer v. Vogl (17 N Y 2d 27, 32), where a number of relevant cases are set forth, and in the Study by Professor Willis Reese on the basis of which the Judicial Conference recommended the amendment that became chapter 590 of the Laws of 1966 (Eleventh Annual Report of N. Y. Judicial Conference, Legis. Doc., 1966 No. 90, pp. 132, 136 footnote). The problem is delineated by the statements in Hanson v. Denckla (357 U. S. 235,251,253) that: “ However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the ‘ minimal contacts ’ with that State that are a prerequisite to its exercise of power over him. See International Shoe Co. v. Washington, 326 U. S. 310, 319. " * * The application of that rule will vary with the quality and nature of the defendant’s activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.”, and, in International Shoe Co. v. Washington (326 U. S. 310, p. 319) (to which the Hanson opinion referred), that “Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure.”
The “substantial revenue ” provision of CPLR 302 (subd. [a], par. 3, el. [i]), is predicated on the concept that one who derives substantial revenue from goods used or consumed or services rendered in the State has sufficient contact with the State to sustain jurisdiction of an action to recover for an injury to person or property occurring within the State as a result of a tortious act committed by the defendant outside this State. Similarly the basis of CPLR 302 (subd. [a], par. 3, cl. [ii]) is that one who derives substantial revenue from interstate or international commerce, even though it does not include substantial revenue to him from goods used or services rendered in New York, nonetheless has sufficient contact with New York to sustain jurisdiction of such an action if he expects or should reasonably expect that his tortious act outside New York will have New York consequences (Judicial Conference Report, supra; 1966 McKinney’s Sess. Laws, pp. 2788-2789). “ In these situations it might be thought fair and
*224 desirable for New York to exercise jurisdiction over the defendant manufacturer because he has other contacts with New York or because he is generally equipped to handle litigation away from his business location ” (ibid., p. 2788). On the facts of a particular case it may well be that being generally equipped to handle litigation away from his business location will not be a sufficient basis upon which to found jurisdiction, even though there be reasonable expectation of New York consequences (see Erlanger Mills v. Cohoes Fibre Mills, 239 F. 2d 502 ([C. A. 4th]). It is not necessary now to decide that question, for the moving defendants have not presented facts showing that jurisdiction cannot be sustained under CPLB 302 (subd. [a], par. 3, cl. [i]), and that provision clearly is constitutional. The rationale sustaining it is stated in Gray v. American Radiator & Std. Sanitary Corp., (22 111. 2d 432, 442-443) as follows: ‘ ‘ With the increasing specialization of commercial activity and the growing interdependence of business enterprises it is seldom that a manufacturer deals directly with consumers in other States. The fact that the benefit he derives from its laws is an indirect one, however, does not make it any the less essential to the conduct of his business; and it is not unreasonable, where a cause of action arises from alleged defects in his product, to say that the use of such products in the ordinary course of commerce is sufficient contact with this State to justify a requirement that he defend here.
“As a general proposition, if a corporation elects to sell its products for ultimate use in another State, it is not unjust to hold it answerable there for any damage caused by defects in those products. Advanced means of distribution and other commercial activity have made possible these modern methods of doing business, and have largely effaced the economic significance of State lines. By the same token, today’s facilities for transportation and communication have removed much of the difficulty and inconvenience formerly encountered in defending lawsuits brought in other States.”
While that reasoning was not passed upon by the Court of Appeals in Feathers v. McLucas (supra), it had been accepted by the Appellate Division, Third Department in that case (21 A D 2d 558, 560), by the Appellate Division, First Department in Johnson v. Equitable Life Assur. Soc. (22 A D 2d 138, affd. on stipulation for jurisdiction, 18 N Y 2d 933), and had been accepted in Lewin v. Bock Laundry Mach. Co. (42 Misc 2d 599, affd. by the Appellate Division, Second Department, 22 A D 2d 854, affd. 16 N Y 2d 1070). Accordingly, the motion is denied.