**LEHIGH VALLEY INDUSTRIES, INC.,
and Lehigh Colonial Corporation,
Plaintiffs,**

**v.**

**David BIRENBAUM et al., Defendants.**

**No. 74 Civ. 430.**

United States District Court,
S. D. New York.

Jan. 29, 1975.

Stroock & Stroock & Lavan, New York City, for plaintiffs.

Rogers & Wells, New York City, for defendants.

## MEMORANDUM

STEWART, District Judge:

This action was commenced by plaintiffs, Lehigh Valley Industries, Inc. ("Lehigh") and its subsidiary Lehigh Colonial Corporation ("Colonial"), two Delaware corporations with principal places of business in New York. These two corporations are the successors in interest to the claims of Colonial Shoe Ornament, Inc. ("Ornament").[1] Defendants are David Birenbaum ("David") and his brother Norman Birenbaum ("Norman") and two Spanish corporations Lydia, S.A. ("Lydia") and International David, S.A. ("International"). Defendant Norman, a Massachusetts resident, now moves pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") for an order dismissing the complaint against him for lack of personal jurisdiction.

The complaint alleges, *inter alia*, that David served as principal or agent of International and Lydia at the same time that he was an officer of Ornament and thereby breached his employment contract which required him to devote full time to the business of Ornament. In addition, the complaint alleges that David improperly caused Ornament to purchase its shoe supply from Lydia and thereby earned substantial profits at Ornament's expense; that he caused Ornament to pay Lydia the full invoice price for the goods though he knew they were defective; that he abused his expense account and caused the disappearance of certain property of Ornament; and that he breached his termination agreement with Ornament. The allegations against Norman are in large part derivative of the claims against David. Plaintiffs allege that Norman knew of David's alleged wasteful behaviour and failed to take action to correct it; that Norman aided and abetted David in his wrongful acts; and that Norman conspired with David to divert and appropriate the assets and business opportunities of Ornament by inducing Ornament to abandon its leather stripping business and then stepping into that business with David.[2] In addition, plaintiffs allege that defendants failed to devote full time to Ornament's business.

*Background*

In 1968, David, Norman and two additional shareholders transferred their stock and control in seven Massachusetts corporations, including Ornament, to plaintiff Lehigh through Colonial, a wholly-owned subsidiary of Lehigh, in exchange for shares of common stock of Lehigh. Pursuant to this agreement, dated July 19, 1968, and characterized as a "reorganization agreement" by the parties, the exchange of stock and transfer of control was effected on October 18, 1968. On that date, both David and Norman entered into employment agreements with Ornament to serve as its officers. These employment agreements are referred to in the reorganization agreement (Exhibit 1, Complaint, ¶14).

At some unspecified point in time, a dispute arose between the parties to the reorganization agreement concerning the registration provisions (¶¶ 22–23) of that agreement. Negotiations ensued

---

1. Lehigh is the parent corporation of Colonial, the sole shareholder of Ornament during its existence. Ornament ceased functioning in the summer of 1973 and has since been dissolved. (Complaint, ¶ 12)

2. Norman's affidavit states that since July, 1973 when his employment with Ornament terminated, he has been President, Treasurer and sole stockholder of Louran Corporation ("Louran"), a Massachusetts corporation with its sole place of business in Haverhill, Massachusetts. Louran is engaged in the leather stripping business.

without success. At this time, the four stockholders who had entered into the reorganization agreement brought suit in Massachusetts against Colonial seeking, *inter alia*, compensation for breaches of its registration provisions. In a settlement agreement entered into on March 6, 1972, the parties ended this litigation.

Nearly two years after the Massachusetts case was settled, in January 1974, plaintiffs Lehigh and Colonial brought this action in New York. While David was served with process personally during a business trip to New York, Norman was served with a summons and complaint in Massachusetts on February 15, 1974. It is that foreign service which is contested in the present motion. Defendant Norman contends there was no basis for such service and that therefore this court is without personal jurisdiction over him and must dismiss the action against him.

Plaintiffs contend that personal jurisdiction over Norman is predicated upon New York's long-arm statute which provides for extraterritorial service of process in certain instances. Civil Practice Law and Rules ("CPLR") § 302. That section is applicable here through Rule 4(e) Fed.R.Civ.P. which provides for extraterritorial service of process in a federal case in accordance with the statutes of the state in which the federal district court sits. The question for decision here, therefore, is whether various provisions of CPLR § 302 allow service of process to be made upon Norman in Massachusetts. Section 302 provides, in relevant part:

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state; or

2. commits a tortious act within the state . . . or

3. commits a tortious act without the state causing injury to person or property within the state . . . if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

Plaintiffs contend that the breach of employment contract allegation is supported by CPLR § 302(a)(1). The conspiracy allegations are supported by CPLR § 302(a)(3)(ii). They further urge that the allegations of breach of fiduciary duty and appropriation of business opportunity are supported by both of the above sections and that the latter contention is additionally supported by CPLR § 302(a)(2). We will discuss each jurisdictional theory in turn.

1. *Jurisdiction under CPLR § 302(a) (1)*

In order to obtain personal jurisdiction over defendant Norman under CPLR § 302(a)(1), plaintiffs must show that Norman transacted business in New York and that the cause of action arises out of that transaction of business. Plaintiffs attempt to do this with respect to three of their claims against Norman: breach of the employment contract, breach of fiduciary duty and misappropriation of a business opportunity. All three of these claims, plaintiffs argue, "arise out of" Norman's employment contract with Ornament.

Plaintiffs do not allege that defendant Norman personally has transacted sufficient business in New York to subject him to the personal jurisdiction of this court. Rather they claim that David was Norman's agent on three trips which he made to New York allegedly to negotiate his own and Norman's employ-

ment contracts. Plaintiffs argue that these negotiations by Norman's "agent" in New York constitute the transaction of business for purposes of CPLR § 302(a)(1).

Defendant Norman denies plaintiffs' allegation stating: "I do not have and have not had any agent authorized to perform any acts in New York on my behalf." (Affidavit, p. 3). It is in this posture that we must decide whether the acts of David in New York would be a sufficient transaction of business if they were performed on behalf of Norman and second, whether David was, in fact, Norman's agent.

Plaintiffs cite us to two cases in support of their position that, if David was in New York as Norman's agent, there was a transaction of business sufficient to meet the statutory test. Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), cert. denied sub nom. Estwing Mfg. Co. v. Singer, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965); Liquid Carriers Corp. v. American Marine Corp., 375 F.2d 951 (2d Cir. 1967). We do not find these cases to be persuasive here. The negotiations which comprised the necessary contacts with the forum in both cases were substantially more than in the present case.[3]

In the instant case, plaintiffs have not shown that David did anything more than "negotiate" identical form contracts for him and for Norman when he was in New York. In addition, while the "negotiations" on Norman's behalf purportedly took place in New York, the contract was signed in Massachusetts. We also note that the contract here—an employment contract by which defendant Norman agreed to work for a Massachusetts corporation in Massachusetts—renders it substantially different from the cases cited to us by plaintiffs. Without more, we cannot say that David was Norman's agent transacting business in New York State. Plaintiffs bear the burden of proof on this motion, McNutt v. GMAC, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1956); Unicorn Management Corp. v. Koppers Co., 250 F.Supp. 850 (S.D.N.Y.1966); Saratoga Harness Racing Assoc., Inc. v. Moss, 26 A.D.2d 486, 275 N.Y.S.2d 888, aff'd 20 N.Y.2d 733, 283 N.Y.S.2d 55, 229 N.E.2d 620 (1967), and have failed to meet it in this regard. We do not think that the New York courts would find these negotiations by Norman's purported agent sufficient to conclude even that defendant Norman "purposefully avail[ed] [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958) and New York has not interpreted section 302 to extend as far as this statement of the minimal constitutional contacts required by due process. Liquid Carriers Corp. v. American Marine Corp., 375 F.2d 951, 955 (2d Cir. 1967); Lavie v. Marketscope Research Co., 71 Misc.2d 373, 336 N.Y.S.2d 97 (App.T.1972).[4]

---

3. In *Longines* the court found the following acts to be sufficient to constitute the transaction of business within the state:

. . . Substantial preliminary negotiations through high-level personnel during a period of some two months; the actual execution of a supplementary contract; the shipment for use here, subject to acceptance following delivery, of two specially designed machines, priced at the not inconsiderable sum of $118,000; and the rendition of services over a period of some three months by two of the appellant's top engineers in supervising the in-

stallation and testing of the complex machines. 261 N.Y.S.2d at 19, 209 N.E.2d at 69.

Similarly, in *Liquid Carriers* the Second Circuit found more frequent incidents of purposeful activity within the state than can be found in the present case. *See* 375 F.2d at 956.

4. On legislative intent, see New York Judicial Conference, Report to the 1966 Legislature in Relation to the Civil Practice Law and Rules 12–24 (1966).

■ While we have some reservations about plaintiffs' contention that David was Norman's agent for purposes of negotiating the employment contract in terms of traditional principles of agency,[5] we do not need to reach this question in view of our finding that even if David were Norman's agent, his contacts on behalf of Norman would be inadequate for jurisdictional purposes.

Plaintiffs next contend that Norman's trips to New York to negotiate the settlement agreement and paragraph 6 of that agreement's "reaffirmance" of the employment contract constitute sufficient transaction of business in New York. Norman's affidavit acknowledges that he made three trips to New York between March, 1970 and March, 1972 in connection with these negotiations and the signing of the settlement agreement of March 6, 1972.

This agreement provided that Lehigh, Colonial and Ornament would release defendants David and Norman from "any and all claims, liabilities or rights of action of any nature whatsoever arising out of events prior to the date thereof . . . ." Defendant Norman claims that by virtue of this settlement agreement plaintiffs waived any claims against him arising out of events prior to March 6, 1972. Plaintiffs do not dispute this contention.[6] They argue, however, that the settlement agreement "reinforces the jurisdictional base over Norman with respect to all causes of action arising out of the employment agreement" because it "reaffirms" the 1968 employment agreement. (Plaintiffs' memorandum, p. 18).

■ CPLR Section 302(a)(1) requires that a cause of action "arise out of" the transaction of business within the state. *See* Rene Boas and Associates v. Vernier, 22 A.D.2d 561, 257 N.Y.S.2d 487 (1965). We cannot find that plaintiffs' claims arise out of this settlement agreement. Here, while the negotiations by Norman and his trips to New York in connection with the settlement might and probably do constitute the transaction of business in New York for purposes of some conceivable causes of action, the claims in this action arise out of the employment contracts and not out of the settlement negotiations or the settlement itself even if it reaffirms the employment contract. We think that the New York courts would find the settlement and negotiations over it to be separate and distinct from negotiations over the employment contract and the contract itself for purposes of meeting the "arising out of" requirement of CPLR § 302. *See* Fontanetta v. American Board of Internal Medicine, 421 F.2d 355 (2d Cir. 1970) and cases cited therein at 357–358.

Finally, plaintiffs contend that the trips made by Norman after the March 6, 1972 settlement date in connection with his employment as an officer of Ornament constitute a sufficient transaction of business in New York for jurisdictional purposes. Defendant Norman admits that he made trips to New York approximately once a year for purposes of attending shoe shows at which he made agreements to sell products on behalf of Ornament. In addition, in his capacity as an executive of Ornament, he admits he attended a Christmas party in New York in December 1972 for executives of Lehigh. He affirms, however, that he conducted no business in an individual capacity on that or on any of the other trips.

■■ While plaintiffs contend that these trips constitute a sufficient jurisdictional basis, we disagree. It is axiomatic that jurisdiction over an individual cannot be predicated upon jurisdiction over a corporation. That is to say, an

---

5. Plaintiffs alternatively claim that, although David was not Norman's agent at the time of the employment negotiations, Norman subsequently ratified David's conduct on his behalf by signing the contract.

6. Therefore, Norman's communications by telephone and letter in connection with negotiations over the registration provisions of the reorganization agreement are not claimed by plaintiffs to give rise to jurisdiction.

individual's transaction of business within the state solely as an officer of a corporation does not create personal jurisdiction over that individual. Path Instruments Internat'l Corp. v. Asahi Optical Co., 312 F.Supp. 805 (S.D.N.Y. 1970); Schenin v. Mirco Copper Corp., 272 F.Supp. 523 (S.D.N.Y.1967); Unicon Management Corp. v. Koppers Co., 250 F.Supp. 850 (S.D.N.Y.1966); Yardis Corp. v. Cirami, 76 Misc.2d 793, 351 N.Y.S.2d 586 (1974). Defendant Norman states in his affidavit that these trips to New York were solely in his capacity as an officer of Ornament. Since plaintiffs have not shown any evidence to the contrary, they have failed to offer a sufficient theory for personal jurisdiction over defendant Norman under CPLR § 302(a)(1).

**2. *Jurisdiction under CPLR § 302(a) (3)(ii)***

Plaintiffs claim that jurisdiction for the allegations of breach of fiduciary duty and appropriation of business opportunity as well as the two conspiracy counts is founded upon CPLR § 302(a)(3)(ii). We will discuss the substantive and conspiracy counts separately.

**a. *the substantive counts***

■ In order to obtain jurisdiction over defendant Norman under section 302(a)(3)(ii), plaintiffs must show that a tortious act was committed outside the state which caused injury to a person or property within the state. In addition, plaintiffs must show that defendant Norman "expect[ed] or should reasonably [have] expect[ed] the act to have consequences in the state and derives substantial revenue from interstate or international commerce." (CPLR § 302(a)(3)(ii)). Plaintiffs have failed to show the necessary elements. Defendant contends that the torts alleged here are not the type which this section

was primarily designed to cover, since the tortious activity and its resulting damage are of a commercial rather than a physical nature. We agree with plaintiffs, however, that commercial tortious conduct committed outside the state involving breach of fiduciary duty and appropriation of business opportunity may be covered by section 302 in an appropriate case. *See* Path Instruments International Corp. v. Asahi Optical Co., 312 F.Supp. 805 (S.D.N.Y.1970); Car Freshner Corp. v. Broadway Manufacturing Corp., 337 F.Supp. 618 (S.D.N.Y. 1971).[7]

■ The next question for decision is whether the harm or injury caused by the alleged torts occurred within the State of New York. We do not think that there is a sufficient showing of harm within New York to meet this requirement of CPLR § 302(a)(3)(ii). The required injury in New York must be of a direct nature and not "remote or consequential injuries which occur in New York only because the plaintiff is domiciled, incorporated or doing business in the state." Friedr Zoellner (New York) Corp. v. Tex Metals Co., 396 F.2d 300, 303 (2d Cir. 1968). *See* American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp., 439 F.2d 428 (2d Cir. 1971); Gildenhorn v. Lum's Inc., 335 F.Supp. 329 (S.D.N.Y.1971). We do not think that the alleged harm here was done directly to Lehigh and Colonial, whose principal places of business are in New York. The harm here was done directly to Ornament, a Massachusetts corporation doing business in Massachusetts, and only indirectly to Colonial and Lehigh.

■ Plaintiffs claim that there was direct harm to a New York corporation because Ornament "although separately incorporated, functioned as a mere department or division of Lehigh." (Tardiff affidavit ¶ 2). Thus, they claim,

---

7. To the extent that the allegations in the complaint against Norman involve his failure to act, it is clear that the situs of any such failure was entirely in Massachusetts. *See*

Platt v. Platt, 17 N.Y.2d 234, 270 N.Y.S.2d 408, 217 N.E.2d 134 (1966); Kramer v. Vogl, 17 N.Y.2d 27, 31, 267 N.Y.S.2d 900, 903, 215 N.E.2d 159, 161 (1966).

that even though the alleged improprieties were committed against Ornament, we should, in effect, pierce the corporate veil to find that Ornament and Colonial are the same corporation. Plaintiffs intimate that a valid reason for so doing is the fact that Ornament is wholly-owned by Colonial. New York case law, however, does not provide for piercing the corporate veil solely because there is only one shareholder. Bartle v. Home Owners Cooperative, 309 N.Y. 103, 127 N.E.2d 832 (1955); Jenkins v. Moyse, 254 N.Y. 319, 172 N.E. 521 (1930).

In most instances, it is necessary to show that there is fraud, misrepresentation or illegality involved in the designation of parent and subsidiary which would make it inequitable for the courts to ignore the true relationship between the two entities. In the instant case, there has been no such showing. Plaintiffs have also failed to make a sufficient showing that Ornament and Colonial operated as one and the same corporation in their attempt to demonstrate that harm to Ornament was the same as harm to Colonial. *Cf.* Public Administrator v. Royal Bank of Canada, 19 N.Y.2d 127, 278 N.Y.S.2d 378, 224 N.E.2d 877 (1967) (finding two corporations indistinguishable for jurisdictional purposes).

Even if plaintiffs could show that Colonial and Ornament should be regarded as the same corporation, it would fail to change our decision. In American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corporation, 439 F.2d 428 (2d Cir. 1971), the Second Circuit was faced with a similar problem of determining the situs of injury for purposes of CPLR § 302(a)(3). That court found insufficient New York injury where a Michigan corporation allegedly damaged a New York corporation's business by stealing customers in two states outside New York. In so finding, the court stated:

> Of course, there is no question that plaintiffs suffered some harm in New York in the sense that any sale lost

anywhere in the United States affects their profits. But that sort of derivative commercial injury in the state is only the result of plaintiffs' domicile here.

439 F.2d at 433. *See* Friedr Zoellner (New York) Corp. v. Tex Metals Co., 396 F.2d 300 (2d Cir. 1968); Spectacular Promotions, Inc. v. Radio Station WING, 272 F.Supp. 734 (E.D.N.Y.1967).

Finally, while the lack of injury in New York precludes our finding personal jurisdiction under CPLR § 302(a)(3)(ii), we also note that plaintiffs have failed to show that defendant Norman received substantial revenue from interstate or international commerce. While plaintiffs are correct in asserting that the revenue derived from interstate commerce need not be related to the acts out of which the case arises, Gillmore v. J. S. Inskip, Inc., 54 Misc.2d 218, 282 N.Y.S.2d 127 (Sup.Ct.1967), they are incorrect in reasoning that the revenue derived by Louran [8] is automatically attributable to its sole shareholder defendant Norman. We see no reason to make any distinction between piercing the corporate veil to find injury in New York as set forth above and piercing the corporate veil to show substantial revenue was derived from international or interstate commerce. *See* Ferrante Equip. Co. v. Lasker-Goldman Corp., 26 N.Y.2d 280, 309 N.Y.S.2d 913, 258 N.E.2d 202 (1970). Jurisdiction over Louran and not over defendant Norman as an individual could be obtained by demonstrating that Louran received substantial revenues from interstate commerce.

b. *the conspiracy counts*

Plaintiffs allege in their complaint that defendants David and Norman engaged in a conspiracy to divert the assets and business opportunities of Ornament for their own use. (Complaint, ¶ 15). In addition, plaintiffs allege that defendant Norman "conspired with and aided and abetted" defendant David "in furtherance of a common scheme and plan to destroy the business of the plain-

8. See *supra*, Note 2.

tiffs and to profit thereby." (Complaint, ¶ 48).

Plaintiffs predicate personal jurisdiction over Norman for purposes of these conspiracy claims again upon CPLR § 302(a)(3)(ii). Their theory is that since co-conspirators act as agents for each other in all the acts in furtherance of the conspiracy, David's acts are attributable to Norman. Since plaintiffs claim jurisdiction under CPLR § 302(a)(3)(ii) providing for jurisdiction over torts committed outside the state, we infer that David's acts which plaintiffs seek to attribute to Norman are acts which occurred outside of New York State.

The first conspiracy alleged—the diversion of assets and business opportunities of Ornament—relates in large part to David's alleged wrongful activities in connection with the two defendant Spanish corporations named as co-conspirators, Lydia and International. While Norman is named as a co-conspirator in this alleged conspiracy, plaintiffs do not cite any specific act nor offer any evidence in support of this allegation. The second claimed conspiracy—the destruction of plaintiffs' business—specifically reasserts the same facts cited in furtherance of the first alleged conspiracy, and additionally refers to the facts alleged in the complaint relating to the appropriation of a business opportunity belonging to Ornament. In support of this alleged conspiracy, the complaint states that both David and Norman made misrepresentations. (¶¶ 50–54). Specifically, plaintiffs assert that "David on behalf of himself and his brother Norman, began urging Lehigh to end Ornament's involvement in the leather stripping business." (Tardiff affidavit, p. 4). Two issues arise here in connection with plaintiffs' jurisdictional theory. First, whether plaintiffs have made a sufficient showing of a conspiracy and defendant Norman's involvement in that conspiracy to warrant our hinging personal jurisdiction over Norman on that theory. Second, whether a conspiracy claim can give rise to the kind of attribution of acts by a co-conspirator with sufficient contacts in New York to another nondomiciliary conspirator in order to obtain personal jurisdiction over that defendant. Turning to the latter question first, there appears to be a split of authority in the few New York cases which we have found discussing the question. *Compare* Lamarr v. Klein, 35 A.D.2d 248, 315 N.Y.S.2d 695 (1970) *with* American Broadcasting Cos. v. Hernreich, 40 A.D.2d 800, 338 N.Y.S.2d 146 (1972). The *Lamarr* court apparently thought that no attribution among co-conspirators was possible but rather that it was necessary for each defendant to have committed an act within the purview of CPLR § 302 in order for the court to obtain personal jurisdiction over co-conspirators. In dismissing a complaint against an alleged co-conspirator served in California for lack of personal jurisdiction, the court stated: "Nowhere within [the] contents [of the complaint] is there any intimation that the defendant . . . committed any act in the State of New York in furtherance of the alleged conspiracy." 315 N.Y.S.2d at 696. The dissenting judge also construed the majority opinion as precluding plaintiffs' theory here since, commenting on the majority opinion in dissent, he thought it "immaterial both as to liability and jurisdiction over [defendant] whether the acts performed by him were carried out in this state, as long as sufficient was done here by other conspirators to confer jurisdiction." 315 N.Y.S.2d at 698–699.[9] *Accord* Amerian Broadcasting Cos. v. Hernreich, 40 A.D.2d 800, 338 N.Y.S.2d 146 (1972).

 We agree with the *Hernreich* court and with the dissent in *Lamarr* that the acts of a co-conspirator

---

9. In *Lamarr* plaintiffs were trying to predicate long-arm jurisdiction upon CPLR § 302(a)(2) which provides jurisdiction over a nonresident for a tort committed within the state. The principle is similarly applicable, however, to the instant case where jurisdiction is alleged to arise under CPLR § 302(a)(3)(ii) for a tort committed outside the state.

may be attributed to a defendant in an appropriate case for purposes of obtaining personal jurisdiction over that defendant under the long-arm statute. In theory, there is no distinction between attributing the acts of an agent and those of a co-conspirator to a defendant for jurisdictional purposes. In practice, however, there is a distinction which creates difficulty in the offer of proof necessary to predicate jurisdiction upon the acts of a co-conspirator. Sufficient proof of a conspiracy for jurisdictional purposes is more likely to touch upon the merits of a complaint than proof of other kinds of agency. Plaintiffs here claim, as plaintiffs in *Lamarr* apparently did, that they should not have to prove their case before trial. "Whether or not Norman actually participated in the alleged conspiracy is an issue for proof at trial and cannot be decided on this motion." (Plaintiffs' brief, p. 31). On the other hand, it is indisputable, as defendant claims, that plaintiffs must prove that jurisdiction exists over defendant Norman. While there is a greater likelihood of overlapping the jurisdictional question with the merits when jurisdiction is predicated upon the acts of a co-conspirator, we think it is entirely possible for plaintiffs to make a sufficient showing of a conspiracy and of defendant Norman's participation in that conspiracy for jurisdictional purposes short of having to prove their case before trial. *See* United States v. Montreal Trust Co., 358 F.2d 239 (2d Cir. 1966); Lamarr v. Klein, 35 A.D.2d 248, 315 N.Y.S.2d 695 (1970). Plaintiffs have failed, however, to make this showing here.

The Second Circuit, dealing with the evidentiary showing necessary to obtain long-arm jurisdiction under § 302, concluded that the plaintiff was required to establish "at least threshold jurisdiction" and that thereafter plaintiff could prove the facts upon which jurisdiction was based at trial by a preponderance of the evidence. United States v. Montreal Trust Company, 358 F.2d 239, 242 (2d Cir. 1966). We think

plaintiffs have failed to make such a prima facie showing with respect to either of the alleged conspiracies between David and Norman. As this court said in Unicon Management Corp. v. Koppers Co., 250 F.Supp. 850 (S.D.N.Y.1966) (Herlands, J.) "plaintiff cannot by a 'bland assertion' that [certain persons] were the agents of the individual defendants confer personal jurisdiction over the individual defendants . . . The burden of pleading and proving jurisdiction is upon the party asserting its existence." 250 F.Supp. at 852.

Because we find an insufficient showing that Norman participated in a conspiracy here to take personal jurisdiction over defendant Norman on that theory, we do not reach the further issue raised by defendant of whether § 302(a)(3)(ii) requires that the individual defendant meet the requirements of substantial interstate or international revenue or whether it is sufficient that a co-conspirator meets the requirement.

3. *Jurisdiction under CPLR § 302 (a)(2)*

Plaintiffs allege in the eighth count of their complaint that defendants misappropriated a business opportunity belonging to Ornament by inducing Ornament to quit the domestic leather stripping business and then entering the same business themselves through Louran Corporation. On this count alone, plaintiffs claim that jurisdiction is predicated not only upon CPLR § 302(a)(1) and CPLR § 302(a)(3)·(ii), but also upon CPLR § 302(a)(2), which provides long-arm jurisdiction for claims relating to a tort committed within the State of New York. Plaintiffs cite two cases for the proposition that "[w]here a defendant knowingly sends into a state a false statement, intending that it should be relied upon to the injury of a resident of the state, he has, for jurisdictional purposes, acted within that state." Polish v. Threshold Technology, Inc., 72 Misc. 2d 610, 612, 340 N.Y.S.2d 354, 356 (Sup.Ct.1972), quoting Murphy v. Erwin-Wasey, 460 F.2d 661, 664 (1st Cir.

808

1972). On this point, we find control-
ling Kramer v. Vogl, 17 N.Y.2d 27, 267
N.Y.S.2d 900, 215 N.E.2d 159 (1966).
There, the New York Court of Appeals
held that no tort was committed in New
York where nonresidents made false rep-
resentations outside New York which in-
duced plaintiff to rely upon those repre-
sentations in New York, with resulting
injury in New York. In so doing, the
court stressed "that the statutory phrase
[CPLR § 302(2)] is not synonymous
with 'commits a tortious act *without* the
state which causes injury within the
state'." 267 N.Y.S.2d at 903, 215 N.E.
2d at 161.

*Conclusion*

For all of the above reasons, we con-
clude that plaintiffs have not made a
sufficient showing of personal jurisdic-
tion over defendant Norman. We there-
fore grant defendant Norman's motion
to dismiss the complaint against him for
lack of personal jurisdiction.

So ordered.