BULK OIL (USA) INC., a New York Corporation (formerly Western Hemisphere Bulk Oil (U.S.A.) Inc.), Plaintiff,

v.

SUN OIL TRADING COMPANY, a Delaware Corporation, Sun International Inc., a Delaware Corporation, Sun International Limited, a Bermuda Corporation, G.F. Cerchio, R.H. Rodgers, W.C. Lemmer, F.R. Copple, G.R. Henderson, P.E. Macht, and B.H. Cross, Defendants.

No. 81 Civ. 3497(CES).

United States District Court, S.D. New York.

Aug. 11, 1983.

De Vos & Co., P.C., New York City, for plaintiff; Lloyd M. De Vos, New York City, of counsel.

Parker, Auspitz, Neesemann & Delahanty, New York City, for defendants; John Delehanty, New York City, of counsel.

## MEMORANDUM DECISION

STEWART, District Judge:

In this action, plaintiff seeks to recover damages from defendants for their alleged breach of contract, fraud, conspiracy, conversion and violation of the RICO statute. The facts of this case concern defendants' failure to pay for fuel oil brought from plaintiff in May of 1981. In a Memorandum Decision dated March 24, 1982, we granted partial summary judgment for the plaintiff on its contract claim. This decision was affirmed in part and reversed in part by the Second Circuit in *Bulk Oil (USA), Inc. v. Sun Oil Trading Co.*, 697 F.2d 481 (2d Cir.1983). In our decision of March 1982, we also granted defendants' motion to dismiss plaintiff's fraud claim, but granted plaintiff leave to replead this claim. Defendant now moves to dismiss portions of the amended complaint filed after our March 1982 decision on the grounds that

(1) the doctrine of res judicata bars plaintiff from asserting any claim other than common law fraud;

(2) the plaintiff's RICO claim is legally insufficient;

(3) venue in this district is improper for plaintiff's RICO claim against defendants other than Sun, SIL and Cross;

(4) this court lacks personal jurisdiction over the individual defendants; and

(5) plaintiff's jury demand is untimely under Fed.R.Civ.P. 38.

We address these grounds in turn.

### 1. Res Judicata Effect of April 1982 Judgment

■ In our Memorandum Decision of March 1982, we acknowledged that the scope of plaintiff's fraud claim appeared "considerably greater than the complaint regarding the 15,000 barrels of oil". Our granting of leave for plaintiff to replead this claim was thus premised on the fact that it appeared that new facts in the case had been discovered. Under these circumstances, we do not believe the doctrine of res judicata should bar new claims based upon the newly discovered facts. Indeed, Fed.R.Civ.P. 60(b)(2) would appear to allow plaintiff to be relieved from the April 1982 Judgment under these circumstances if necessary. Accordingly, we decline to hold the April 1982 Judgment bars assertion of any claims other than the fraud claim.

### 2. The RICO Claim

■ As explained more fully in our *Bulk Oil (Zug)* decision, to state a civil claim under the RICO statute, a plaintiff must allege an injury "by reason of section 1962" of the RICO statute. *See* 18 U.S.C. § 1964(c) (1976). As was the case in *Bulk (Zug)*, plaintiff here clearly does not allege injury "by reason of" violations of sections 1962(a)[1] or (b).[2] As for injury under section 1962(c)[3] plaintiff has again failed to distinguish the enterprise whose affairs are conducted and the persons who "conduct or participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity ...". We would assume that plaintiff intends SOTC as the "enterprise" and the named individuals as the "persons". If this assumption is correct, however, plaintiff has not stated a claim for treble damages against SOTC under section 1962(c). "It is only a person, or one associated with an enterprise, not the enterprise itself, who can violate the provisions of the section." *Van Schaick v. Church of Scientology of California, Inc.*, 535 F.Supp. 1125, 1136 (D.Mass.1982). With respect to the individual defendants, it appears that the Amended Complaint, read in a liberal fashion, does state a claim of injury by reason of a violation of section 1962(c), however. That is, given paragraphs 82 and 83[4] of the Amended Com-

---

**1.** 18 U.S.C. § 1962(a) provides in relevant part:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in or the activities of which affect, interstate or foreign commerce.

**2.** 18 U.S.C. § 1962(b) provides:

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

**3.** 18 U.S.C. § 1962(c) provides:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

**4.** Paragraph 82 and 83 of the Amended Complaint alleges:

82. Pursuant to 18 U.S.C. § 1962(c), the following persons employed by or associated with SOTC are liable for their direct or indirect participation in a pattern of racketeering activity conducted on behalf of SOTOC:

  a. G.F. Cerchio
  b. R.H. Rodgers
  c. W.C. Lemmer
  d. F.R. Copple
  e. G.R. Henderson
  f. P.E. Macht

plaint, it is not clear to a certainty that the plaintiff would not be able to prove that the named individuals participated in the conduct of SOTC's affairs "through a pattern of racketeering activity". Given this conclusion, moreover, we find that plaintiff has stated a claim against SOTC for injury by reason of violation of section 1962(d)[5] inasmuch as paragraph 52 of the Amended Complaint alleges:

> SII, SIL, P.E. Macht and B.H. Cross conspired in pursuit of the same common plan to commit tortious acts of fraud upon BOUSA *together with SOTC*, G.F. Cerchio, R.H. Rodgers, W.C. Lemmer, F.R. Copple and G.R. Henderson and have actively taken part in a scheme to defraud BOUSA and furthered it by cooperation or request.

(emphasis added). We thus deny defendants' motion to dismiss this claim for legal insufficiency.

### 3. Venue of the RICO Claim

■ Defendants Cerchio, Rodgers, Lemmer, Copple, Henderson and Macht move to dismiss plaintiff's RICO claims as to them on the grounds of improper venue. Plaintiff contends that venue is proper under RICO's venue provision. 18 U.S.C. § 1965(a).[6]

18 U.S.C. § 1965(a) provides that a civil RICO claim may be brought against any person in "any district in which such person resides, is found, has an agent, or transacts his affairs".

We conclude that venue as to these defendants is improper under the RICO statute. Affidavits submitted by the moving defendants indicate that none reside in the Southern District of New York, and that all transact Sun's business from offices in Pennsylvania. None maintain offices in New York. Plaintiff argues that venue is nonetheless proper as to these defendants because SOTC's affairs in New York were transacted on its behalf by Cerchio, Rodgers, Lemmer, Copple and Henderson. "If SOTC transacts business in this district for purposes of venue under 18 U.S.C. § 1965(a)", plaintiff reasons, "then venue here must be proper also for those individuals who transact that business on SOTC's behalf." We find this argument contrary to the express language of the statute: venue under section 1965(a) is proper in the district in which a defendant "transacts *his* affairs" (emphasis added). This language suggests to us that it is the personal affairs of the defendant that are to be considered not affairs he may have transacted on behalf of his employer. *Cf. King v. Vesco*, 342 F.Supp. 120, 123 (N.D.Cal.1972) (examining personal affairs of Robert Vesco to determine whether he "transact[ed] his affairs" in Northern District of California).

The legislative history of section 1965(a) reveals that it was patterned after the venue provision of the antitrust statutes. *See* H.R.Rep. No. 1549, 91st Cong., 2d Sess. (1970), *reprinted in* 2 U.S.Code Cong. & Adm.News 1970, 4007, 4034 (1970). The "transacts his affairs" language of section 1965(a) has thus been held to be synonymous with the "transacts business" language of section 12 of the Clayton Act, 15 U.S.C. § 22. *King v. Vesco*, 342 F.Supp. at 124. Since section 12 of the Clayton Act concerns the "District in which to sue corporation", it does not yield any authority precisely on point with respect to the question of whether the corporation's affairs may be imputed to an individual for venue purposes. However, we note that it has been held that "the test for transacting

---

g. B.H. Cross

83. The individuals named above in paragraph 82 either directly or indirectly participated in the decision to send or the sending of the telexes or the transmission of telephone calls for the purpose of perpetuating a fraud against BOUSA.

5. 18 U.S.C. § 1962(d) provides:

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

6. Since plaintiff has made no claim that venue is proper as to these defendants under 28 U.S.C. § 1391(b), we restrict our discussion to 18 U.S.C. § 1965(c). We also note that defendants concede venue is proper as to defendant Cross, an alien, under 28 U.S.C. § 1391(d).

business for venue purposes under the antitrust laws is co-extensive with the test for jurisdiction under New York CPLR § 302". *Agra Chemical Distributing Co., Inc. v. Marion Laboratories, Inc.*, 523 F.Supp. 699, 702 (W.D.N.Y.1981). Under the "fiduciary shield doctrine", as established by courts of this circuit and New York in applying New York's long arm statute, if an individual has contacts with the state only by virtue of his acts as a fiduciary of a corporation, he may be personally shielded from the exercise of jurisdiction in that state on the basis of that conduct. *Marine Midland Bank N.A. v. Miller*, 664 F.2d 899, 902 (2d Cir.1981).[7] Although the argument here admittedly has several steps—since the corporation's business would not be imputable to the defendants under the long arm statute, it would not under the Clayton Act, and thus not under RICO—we believe each step is sound. We thus conclude that venue is not proper as to these defendants under section 1965(a), and dismiss this claim as to them.

### 4. Jurisdiction over the Individual Defendants.

■ In its Amended Complaint, plaintiff added as defendants seven individuals who are officers and agents of various Sun entities. These defendants move for dismissal of the complaint as to them for lack of personal jurisdiction.

7. In *Marine Midland Bank,* the court stressed that the doctrine of the fiduciary shield was an equitable one, and thus should not be applied mechanically. "In each instance, fairness is the ultimate test. [The doctrine's] applicability depends generally on the employee's faithful pursuit of the corporation's interests rather than his own interests". *Id.* at 903. Another factor to be considered is the nature of the corporation and the individual's relationship to it. "If the corporation is a mere shell for its owner, the employee-owners' actions may be viewed as having been taken simply in his own interest." *Id.* In this case since we find no suggestion that the defendants were engaged in self-dealing or that the corporation was a mere shell, we see no reason why the fiduciary shield would not apply.

In diversity cases, the law of the forum state governs the exercise of personal jurisdiction by the federal court. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 901 (2d Cir.1981). As for suits brought in federal court on a federally created right, however, general federal law determines amenability to suit. C. Wright & A. Miller, 4 Federal Practice and Procedure § 1075 at 302 (1969). In this case, since we have dismissed the federal RICO claim as to six of the seven defendants, the law of New York determines whether we have personal jurisdiction over them with respect to the remaining state claims. For the one defendant as to whom the RICO claim stands, a federal "minimum contacts" analysis must be applied.

### a. Jurisdiction under New York's Long Arm Statute

■ Plaintiff asserts that in this case, jurisdiction over the individual defendants exists by virtue of New York's Long Arm Statute, N.Y.Civ.Prac.Law § 302(a) (McKinney 1972 & 1983 Supp.). Specifically, plaintiff asserts that jurisdiction exists under section 302(a)(2) ("tortious act within the state"); section 302(a)(3)(ii) (tortious act without the state plus substantial revenue from interstate or international commerce); and section 302(a)(1) ("contracts anywhere to supply goods or service in the state"). We set out the full text of these provisions at the margin.[8]

8. Plaintiff relies upon the following portions of N.Y.Civ.Prac. Law § 302 (McKinney 1972 & 1983 Supp.):
Personal jurisdiction by acts of non-domiciliaries
(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
1. ... contracts anywhere to supply goods or services in the state; or
2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

We find the plaintiff has not met its burden of establishing the existence of personal jurisdiction over the individual defendants under any of these provisions.

While there is authority to the contrary, *see Transamerica Corp. v. Transfer Planning, Inc.,* 419 F.Supp. 1261, 1262–63 (S.D. N.Y.1976); *Honda Associates, Inc. v. Nozawa Trading, Inc.,* 374 F.Supp. 886, 888–89 (S.D.N.Y.1974); *Polish v. Threshold Technology, Inc.,* 72 Misc.2d 610, 340 N.Y. S.2d 354, 356 (Sup.Ct.N.Y.Co.1972),[9] we believe the weight of authority establishes that jurisdiction under section 302(a)(2) is only proper when the defendant performed the act that caused the injury in New York. *Kramer v. Vogl,* 17 N.Y.2d 27, 267 N.Y. S.2d 900, 215 N.E.2d 159 (1966); *Bauer Industries, Inc. v. Shannon Luminous Materials Co.,* 52 A.D.2d 897, 383 N.Y.S.2d 80 (2d Dep't 1976); *Glucoft v. Northside Savings Bank,* 86 Misc.2d 1007, 382 N.Y. S.2d 690 (Civ.Ct. Bronx Co.1976). *See also Selman v. Harvard Medical School,* 494 F.Supp. 603, 612–13 (S.D.N.Y.), *aff'd mem.,* 636 F.2d 1204 (2d Cir.1980); *Bialek v. Racal-Milgo, Inc.,* 545 F.Supp. 25, 35 (S.D.N. Y.1982); McLaughlin's Practice Commentary C302:17, N.Y.Civ.Prac.Law § 302 (McKinney 1972). Since the plaintiff does not allege that the individual defendants committed any tortious act in New York, it has failed to make a *prima facie* showing of jurisdiction under section 302(a)(2).

N.Y.Civ.Prac. Law § 302(a)(3)(ii) governs tortious acts without the state causing injury within the state if the defendant "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce". In this case, plaintiff asserts that jurisdiction over the individual defendants under section 302(a)(3)(ii) may be had because "as offi-

cers and employees of oil trading companies and whose activities involve them in international oil transactions, the defendants derive substantial amounts if not all their personal income from interstate and international commerce which they control on behalf of the corporate defendants". Plaintiff's Memorandum in Opposition at 12.

As was noted at oral argument, the case law specifically considering the "substantial revenue" requirement with respect to individuals is quite sparse. However, the few authorities we have found suggest to us that it is the individual, and not his corporate employer, who must derive "substantial revenue" for jurisdiction to attach under section 302(a)(3)(ii). In *Lehigh Valley Industries v. Birenbaum,* 389 F.Supp. 798 (S.D.N.Y.), *aff'd,* 527 F.2d 87 (1975), this court declined to attribute revenue derived by a corporation for its interstate commerce to its sole shareholder for section 302(a)(3)(ii) purposes. We stated:

> While plaintiffs are correct in asserting that the revenue derived from interstate commerce need not be related to the acts out of which the case arises, *Gillmore v. J.S. Inskip, Inc.,* 54 Misc.2d 218, 282 N.Y.S.2d 127 (Sup.Ct.1967), they are incorrect in reasoning that the revenue derived by Louran is automatically attributable to its sole shareholder defendant Norman. We see no reason to make any distinction between piercing the corporate veil to find injury in New York as set forth above and piercing the corporate veil to show substantial revenue was derived from international or interstate commerce. *See Ferrante Equip. Co. v. Lasker-Goldman Corp.,* 26 N.Y.2d 280, 309 N.Y.S.2d 913, 258 N.E.2d 202 (1970). Jurisdiction over Louran and not over

---

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

**9.** At oral argument, plaintiff also cited to us *Parke-Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 256 N.E.2d 506, 308 N.Y.S.2d 337

(1970) and *China Union Lines, Ltd. v. American Marine Underwriters, Inc.,* 454 F.Supp. 198 (S.D. N.Y.1978) as further authority for the proposition that a defendant need not perform the tortious act in New York for jurisdiction to attach under section 302(a)(2). These cases, however, concern section 302(a)(1), the "transacting business" standard.

defendant Norman as an individual could be obtained by demonstrating that Louran received substantial revenues from interstate commerce.

389 F.Supp. at 805 (footnote omitted). *See also Merkel Associates, Inc. v. Bellofram Corp.*, 437 F.Supp. 612, 618–19 (W.D.N.Y. 1977). Since plaintiff has not established that the individual defendants themselves "derive substantial revenue from interstate or international commerce", they have not met their burden of establishing jurisdiction under 302(a)(3)(ii).

Finally, it is clear that jurisdiction under N.Y.Civ.Proc. Law § 302(a)(1) (McKinney 1983 Supp.) is not available, since only Sun, and not the individual defendants, contracted "to supply goods ... in the state".

### b. Jurisdiction Under Federal Law

■ Since New York has not chosen to extend its Long Arm Jurisdiction to constitutionally permissible limits,[10] the law applicable to defendant Cross by virtue of the federal claim against him is somewhat broader. The touchstone for jurisdiction, of course, is the "minimum contacts" standard identified in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). As explained in *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958):

> it is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

We do not find that the record before us establishes that this broader standard has been met as to defendant B.H. Cross. The Amended Complaint alleges that defendant Cross was the Managing Director of Petrosun Ltd., the agent of SIL through whom the SIL-Bulk (Zug) contract was negotiated. ¶ 36(e). Cross is a British citizen residing in London; Petrosun is a British corporation. Aff. of Bruce H. Cross ¶¶ 1, 3. On May 20, 1981, Cross attended a meeting in Bermuda at which it was decided to "pick up a Bulk asset". Amended Complaint ¶ 36(g). This decision was not a joint decision by all the participants at the meeting, but was rather one reached by defendant G.F. Cerchio. *Id.* Ex. C at 1. At the time the decision was made, Sun did not definitely intend to not pay for the oil ordered from Bulk, but rather intended to use the contract as a bargaining chip in negotiations concerning the Bulk (Zug)-Sun contract in England. *Id.* Ex. C at 4–5. Defendant Cross represented Sun in meetings with Bulk (Zug) in London on May 26–27, 1981. *Id.* Ex. A at 3. On May 27, one McIntyre sent a telex to defendant Macht in London with a copy to Cross that read "BHC-Good show on Bulk oil". *Id.* Ex. C at 5.

On this record, we do not believe plaintiff has met its burden of establishing that defendant has had sufficient contacts with New York, or the United States for that matter, which would make it fair to require him to defend this suit in this court. Cross is not alleged to have ever set foot in the United States. He is alleged only to have attended a meeting in Bermuda that eventually had consequences in the United States. On the record before us, it is not clear at all that those eventual consequences were foreseen by the defendant at that meeting.

We thus conclude we lack personal jurisdiction over this defendant, and we accordingly dismiss this action as to him.

### 5. Right to a Jury Trial

■ Plaintiff included in its Amended Complaint a demand for a trial by jury. Defendant moves to strike this demand as untimely under Fed.R.Civ.P. 38.

Under Rule 38, the right to a jury trial on any issue is generally waived if not asserted within 10 days after the service of the last pleading directed to such issue. If

---

**10.** For example, the "fiduciary shield" doctrine is not a constitutional principle, but is rather a doctrine based on "judicial inference as to the intended scope of the long arm statute". *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 n. 3 (2d Cir.1981).

the original complaint is subsequently amended, however, the right to a jury trial is revived if the amendment changes the issues. *Lanza v. Drexel & Co,* 479 F.2d 1277, 1310 (2d Cir.1973). "Issues" for the purpose of Rule 38, are issues of fact, not legal theories. *Trixler Brokerage Co. v. Ralston Purina Co.,* 505 F.2d 1045, 1050 (9th Cir.1974).

■ In this case, the original complaint concerned defendants' failure to pay for oil as contracted, Complaint ¶¶ 2–11, with the intent to defraud. *Id.* ¶ 12. We believe these two allegations were sufficiently broad to be fairly construed as including plaintiff's new claims of breach of contract (Counts I, II), fraud (Count III), conspiracy to commit fraud (Count IV), conversion (Count V) and also the RICO violation (Count VI). The central factual issues in all these claims are basically the same: did defendants fail to pay as they had contracted, and was this failure a result of fraudulent intent? Accordingly, we hold that plaintiff did waive its right to a jury trial, and strike its demand for such from the complaint.

*6. Summary*

Finding venue for the RICO claim improper as to the individual defendants Cerchio, Rodgers, Lemmer, Copple, Henderson and Macht, and finding that we lack personal jurisdiction over these defendants for the state law claims, we dismiss the Amended Complaint as to them. Finding that we lack personal jurisdiction over defendant Cross, we dismiss the Amended Complaint as to him as well. Finding plaintiff's demand for a jury trial untimely, we strike it from the Amended Complaint. We deny defendants motions in all other respects.

SO ORDERED.